FILED

2004 OCT 28  A 10: 46

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HORACE BRUCE, ET AL. | : | CIVIL ACTION NO. |
| Plaintiffs | : | 3:00 CV 1831 (AWT) |
| | : | |
| v. | : | |
| | : | |
| MOTIVA ENTERPRISES, L.L.C. | : | |
| Defendant | : | OCTOBER 25, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs hereby ask this Court to render summary judgment against Defendant, as authorized by Federal Rule of Civil Procedure 56. Plaintiffs seek injunctive and declaratory relief to correct Defendant's violations of federal and state law.

## I.    Introduction

Plaintiffs are individuals or corporations who operate Shell or Texaco branded service station franchises in Connecticut.

Defendant Motiva Enterprises, L.L.C. ("Motiva"), is a Delaware Limited Liability Company. Motiva rents service station properties and supplies petroleum products to Plaintiffs. Motiva was formed in 1998 by Texaco Inc., Shell Oil Company, Star Enterprises and Saudi Refining, Inc. to combine their marketing and refining assets,

1

including their franchises, in the eastern United States.

By a letter dated December 9, 1999, Motiva sent to Plaintiffs, a Retail Facility Lease ("RFL") and a Retail Sales Agreement ("RSA"). *Plaintiffs' summary judgment exhibits 1, 3 and 5.* RFLs and RSAs, (collectively referred to as the "Agreements") are agreements which govern terms and conditions for occupation of the leased premises and which lay out the terms and conditions for the sale/re-sale of petroleum and products.

On June 18, 2001, Motiva gave notice to Plaintiffs that the Agreements might be amended in the future and unilaterally proposed amended Agreements. None of the Plaintiffs consented to the Agreements. *Plaintiffs' summary judgment exhibits 4 and 6* (collectively referred to as the "Amended Agreements"). Rather than correcting the terms of the Agreements that violated federal and Connecticut law, the Amended Agreements not only included the offending provisions, but compounded them by adding or revising terms in violation of law.

On September 25, 2000, Plaintiffs filed suit in this case complaining that the terms of the Agreements violate the Petroleum Marketing Practices Act, 15 United States Code Section 2801, et. seq. (hereinafter "PMPA") and the Connecticut Franchise Act, <u>Conn. Gen. Stat.</u> §42-133j et. seq. On November 22, 2000, Motiva filed its Answer and Affirmative Defenses and amended the same on December 12, 2000.

2

On March 25, 2002, Plaintiffs filed their Amended Complaint. On April 15, 2002, Motiva filed its Second Amended Answer and Affirmative Defenses. On May 1, 2003, Plaintiffs filed their Second Amended Complaint against Motiva.

Plaintiffs file this Motion for Summary Judgment on the five counts comprising their Second Amended Complaint. Summary judgment should be granted as the evidence establishes all elements of Plaintiffs' claims as a matter of law.

## II.    Standard of Review

Summary judgment is appropriate if the record, judged in the light most favorable to the nonmoving party, discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Plaintiffs' Motion, Memorandum of Law, and Local Rule 56(A)1 Statement Of Uncontroverted Material Facts inform this Court of the basis for summary judgment and identify the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 321-22 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Regardless of whether there is an issue as to the amount of damages, summary judgment should be rendered on the issue of liability and injunctive and declaratory relief ordered. FED. R. CIV. P. 56(c). Plaintiffs have plead and conclusively established every factual element of their claim. Accordingly,

3

summary judgment should be granted as a matter of law.  See <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993); <u>White</u>, 221 F.3d at 300.

Motiva must now come forward with specific facts showing that there is a genuine issue for trial. See <u>*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*</u>, 475 U.S. 574, 586 (1986). Summary judgment should be granted unless the issue to be resolved is both genuine and related to a material fact.

The Plaintiff respectfully submits that a rational trier for fact, when considering the whole record, could not find for the Motiva.  There is, therefore, no genuine issue for trial.  Summary judgment should be granted for Plaintiffs because Motiva fails to establish a genuine issue of material fact on Plaintiffs' claims.

## III.    <u>Undisputed Facts</u>

The undisputed facts are as listed in attached Plaintiffs' Local Rule 56(A)1 Statement of Uncontroverted Material Facts, which is incorporated by reference herein.

## IV.    <u>Statutory Purpose of the PMPA and Applicable Connecticut Law</u>

This case is governed, in part, by the PMPA.  In 1978, Congress enacted the PMPA to attempt to level the vast disparity in bargaining power that exists between multinational oil companies and local gas dealers. *See* S. Rep. No. 95-731, reprinted in 1978 U.S. Code Cong. & Admin. News 873, 875-77;  <u>Lasko v. Consumers</u>

4

<u>Petroleum of Connecticut, Inc.</u>, 547 F. Supp. 211, 216 (D. Conn. 1981).  In particular, Congress prohibited the termination of petroleum franchises except in narrowly defined circumstances enumerated in 15 U.S.C. §2802(b)(2) and guarded against the use of the threat of termination or nonrenewal as a means to force the dealers to agree with the oil company policies.  See <u>Todd v. Gulf Oil Corp.</u>, Civil No. B-83-651, Ruling on Motion to Dismiss (D.Conn. May 18, 1984).  Congress sought to alleviate new abuses by the oil companies when it amended the PMPA in 1994 by adding 15 U.S.C. §2805(f).

The Connecticut Legislature also explicitly found and set forth its concern with the abuses by the oil companies to the detriment of the dealers and the public.  <u>Conn. Gen. Stat.</u> §42-133j.  In response to this concern, the legislature enacted Sections 42-133j through 133n which govern the franchise relationship between oil company and dealers in Connecticut.

In general, the state and federal laws compliment each other.  However, in certain respects, Connecticut law is broader or clearer with respect to rights or remedies.  This circuit has repeatedly enforced the Connecticut Franchise Act.  *See* <u>Bellmore v. Mobil Oil Co.</u>, 783 F.2d 300, 305 (2d Cir. 1986); <u>Lasko</u>, 547 F. Supp. at 216; <u>Todd</u>, Docket # B-83-651;  <u>Kulscar v. Atlantic Richfield</u>, Docket # B-80-182 (D. Conn. 1982).  This Court and the Second Circuit have clearly and repeatedly held that

those portions of the Connecticut Franchise Act which do not specifically regulate "Termination", "Non-renewal" or notice thereof are not pre-empted by the federal law. _Id._

Each of the franchise provisions complained of herein violate state law or federal law or both, and therefore, the Plaintiffs are entitled to Judgment as a Matter of Law.

**V.    Release and Waiver Language in the RFL and the RSA Violate the PMPA and Connecticut Law**

Motiva drafted and included release and waiver language in the Agreements in violation of Connecticut law and the PMPA. Both the RSA and RFL include the following provision (the "Release Provision"):

> The parties release each other, their respective members, subsidiaries, affiliates and joint venture partners, and their respective directors, officers, employees, and agents as of the effective date of this agreement and to the extent permitted by law, from all claims which each party may have against the other (whether or not now known) arising directly or indirectly out of or in connection with any prior agreement, excepting, however, claims of Seller [Lessor] against Retailer [Lessee] for indebtedness, reimbursement, or indemnification. Retailer [Lessee] understands that this release waives any limitation with regard to a general release that may exist under applicable law and that even if Retailer [Lessee] or Seller [Lessor] should later become aware of a claim arising out of events or circumstances not now known or suspected to exist,

6

> Retailer [Lessee] or Seller [Lessor], as the case may be
> will not be able to assert such claim against the other.

Exhibits 3 ¶31 and 5, ¶28 (RFL language in brackets).

By the terms of the Release Provision, dealers must forgo any action or redress, including all state, federal, and common law claims. In exchange for this broad general release, Motiva effectively takes on <u>no</u> further obligations and relinquishes <u>no</u> rights to pursue legal action. The Release Provision provides that Motiva may still bring claims against Plaintiffs for "indebtedness, reimbursement, or indemnification". Plaintiffs submit that virtually all potential claims that Motiva would have against a dealer will arguably fit under those exceptions.

The inclusion of the Release Provision is also a flagrant violation of 15 U.S.C. §2805(f). Section 2805(f) provides:

> (1) No franchisor shall require, as a condition of entering into or renewing the franchise relationship, a franchisee to release or waive -
>> (A) any right that the franchisee has under this subchapter or other Federal law; or
>> (B) any right that the franchisee may have under any valid and applicable State law.

No reasonable reading of the Release Provision will be consistent with Section 2805(f).

The provision also violates Connecticut law.  <u>Conn.</u> <u>Gen.</u> <u>Stat.</u> §42-133*l*(f)(1) provides:

> (f) No franchisor, directly or indirectly . . .shall (:) (1) Require a franchisee at the time of entering into an agreement to assent to a release, assignment, novation, waiver, or estoppel which would relieve any person from liability imposed by sections 42-133j to 42-133n, inclusive

Additionally, <u>Conn.</u> <u>Gen.</u> <u>Stat.</u> §42-133*l*(j) provides:

> (j) Any waiver of the rights of a franchisee under sections 42-133m, 42-133n and this section which is contained in any franchise agreement entered into or amended on or after October 1, 1977, shall be void.

A plain reading of the two sections above shows that, on its face, the Release Provision violates both Provisions of Connecticut Law.  Indeed, by incorporating the language "[Lessee] understands that this Release waives any limitation with regard to a general release that may exist under applicable law", Motiva attempted to circumvent Connecticut law, specifically the Non-Waiver Provision.  The Plaintiffs, by law, cannot waive their protection, nor should they.   Motiva's inclusion of the Release Provision is prohibited conduct under both state and federal law.  Indeed, a California federal court has explicitly held that identical language inserted in agreements by Motiva's sister company Equilon Enterprises, LLC violated 15 U.S.C. § 2805(f).  <u>Coast Village, Inc. v. Equilon Enterprises, LLC</u>, 163 F.Supp.2d 1136, 1178 (C.D.CA 2001) aff'd. 64

*Fed. Appx. 36 (9th Cir. 2003).* Nothing distinguishes the Release Provision before this Court from that ruled upon in <u>Coast Village, Inc.</u>. Accordingly, the result should be the same, and this Court should permanently enjoin Motiva from requiring agreement to the Release Provision as a condition of renewal of any franchise held by Plaintiffs.

**VI.    <u>Trial Franchise Language in the RFL and the RSA Violate the PMPA and Connecticut Law</u>**

Motiva drafted and included "Trial Franchise" language in the Agreements that violates both Connecticut law and the PMPA. That provision, (the "Trial Franchise Provision"), states:

> Except to the extent limited by applicable Law, if the Retailer [Lessee] desires to Transfer its interest in this Agreement [Lease] to an individual or Business Entity that has not previously operated as a retailer of Seller's Products or of Seller's affiliates [Lessor or Lessor's affiliates], then Retailer [Lessee] may be required to execute a mutual termination of this agreement [Lease] and the proposed transferee may be required to execute a trial franchise agreement as a condition to Seller [Lessor] granting its consent to the transfer.

<u>Exhibit 3</u>, ¶22b , <u>Exhibit 5</u>, ¶18b (RFL language in brackets).

In order to be a "Trial Franchise" under Section 2803(b)(1), the contract must be:

A)    entered after June19, 1978;
B)    with a new franchisee;
C)    for a term less than one year; and

     D)    contain certain terms in writing.

*See,* 15 U.S.C. § 2803(b)(1).

If each of the requirements of Section 2803(b)(1) are met, the franchisee no longer enjoys the protection of the PMPA and effectively can be terminated or nonrenewed for any reason, or for no reason. There is no assurance of any longevity at the site. As a result, Trial Franchises have limited value, and certainly substantially less than a PMPA protected Franchise.

The Trial Franchise Provision in the Agreements violates the PMPA and <u>Conn. Gen. Stat.</u> Sections 42-133f(d), 42-133(c), and 42-133(m) because it restricts the Plaintiffs' ability to transfer and sell their property and ignores Connecticut's minimum three-year term for any franchise. Section 2803 of the PMPA provides in part that:

> (b)(2) The term "trial franchise" <u>does not include</u> any unexpired period of any term of any franchise (other than a trial franchise, as defined by paragraph (1)) which was transferred or assigned by a franchisee to the extent authorized by the provisions of the franchise or any applicable provision of State law which permits such transfer or assignment, without regard to any provision of the franchise.

15 U.S.C. §2803(b)(2) (emphasis added).

Both <u>Conn. Gen. Stat.</u> §42-133f(d) and §42-133*l*(c) provide:

> Notwithstanding the provisions of section 52-550, **<u>no franchise</u>** entered into or renewed on or after October 1,

> 1973, whether oral or written, **shall be for a term of less than three years** and for successive terms of not less than three years thereafter unless cancelled, terminated or not renewed pursuant to subsections (a) and (d) of this section

Conn. Gen. Stat. §42-133m sets forth a legislative mandate that the alienation of Connecticut gasoline franchises must be free from unreasonable restraints. It provides, in part:

> (a) A term in any franchise agreement between a franchisor and a franchisee which prohibits the voluntary assignment of the franchise to which they are parties, or which requires the franchisor's consent to such assignment, is ineffective and void as contrary to public policy unless such term provides that consent may be or is reasonably withheld. Reasonable withholding of consent includes, but is not limited to: (1) Material and substantial change of the other party's duties; (2) material and substantial increase of the other party's contractual burden of risk; (3) material and substantial impairment of the other party's opportunity to obtain return performance.

The Trial Franchise Provision is Motiva's attempt to circumvent restrictions set by the PMPA, in concert with Connecticut law. Under Motiva's Agreements, upon transfer of a franchise, its unexpired term, which is, by definition, not a "Trial Franchise" under 15 U.S.C. § 2803(b)(2), becomes a Trial Franchise. In exchange for this metamorphosis of a PMPA Franchise to a Trial Franchise, the dealer receives nothing. No compensation, No protection and No consideration. The transferee

dealer is left with a choice to accept a Trial Franchise for the price of a PMPA Franchise or to walk away. Good business judgment demands that a reasonable transferee will walk away. This control effectively allows Motiva to prohibit transfers without its consent, which violates Connecticut and federal law as set forth above.

The attempt to impose a one-year Trial Franchise on transferee dealers additionally violates Connecticut law because the requirement of Subsection 2803(b)(1)(c), that the term be for less than one year, cannot legally occur in Connecticut. Connecticut franchise law requires a minimum franchise term of three years. This Court has upheld Connecticut General Statute § 42-133*l*(c). *See* Lasko, 547 F. Supp. at 216-217 (holding that §42-133*l*(c) was still good law and not preempted by the PMPA.) "[T]he Connecticut three-year requirement is completely consistent with this section of the PMPA." *Id.; See also* Todd, Docket # B-83-651. As no Connecticut franchise can be for less than three years, the requirements of 15 U.S.C. 2803b can never be met in Connecticut and therefore, a "trial franchise" does not exist.

Even if the three-year mandated term did not exist, however, the Trial Franchise Provision would still violate the PMPA as it infringes upon the assignability of the unexpired term of the plaintiffs franchise, which is prohibited by 15 U.S.C. §2803(b)(2) (excepting unexpired terms from trial franchise); 15 U.S.C. §2806(b) (adopting state

law); and prohibited by Conn. Gen. Stat. §42-133m.

The same issues raised in the instant case were addressed by the court in Coast Village. The challenge was made to a California law similar to the Connecticut provision cited herein. That Court held that the Trial franchise provision of the agreements:

> "eviscerates the protection afforded to petroleum franchisee by [California law], which requires a franchisor to justify withholding its consent to a sale, transfer, or assignment of a franchise in writing, for certain specified reasons. This Trial Franchise clause would bypass this required showing, and also allow [the franchisor] to withhold consent for a non-enumerated reason."

Coast Village Inc., 63 F. Supp. 2d. at 1178.

Nothing distinguishes the Trial Franchise Provision before this Court from that ruled upon in _Coast Village, Inc._. Accordingly, the result should be the same, and this Court should permanently enjoin Motiva from requiring agreement to the Trial Franchise Provision as a condition of renewal of any franchise held by Plaintiffs.

## VII. Transfer Fee Terms in the RFL Violate Connecticut Law

Motiva drafted and included "Transfer Fee" language in the RFL violating Connecticut law, as alleged in paragraph 31 of the First Count and paragraph 27 of the Fifth Count of the Second Amended Complaint. The "Transfer Fee" language drafted by the Motiva and included in the RFL is:

13

"<u>Transfer Fee</u>.    (1)    Except for lessees in New Hampshire or Virginia which will be governed by applicable state Law, to the maximum extent permitted by Law, Lessee shall pay to Lessor a franchise transfer fee ("Transfer Fee") in the form of a bank cashier's check prior to or at the closing of any Transfer.  With the exception of a Transfer in the event of Lessee's death, long term disability, or sickness (6 months or more) that prevents Lessee from operating the business at the premises, the Transfer Fee is applicable to all Transfers, including a Transfer to the Lessor.  If the Lessee Transfers any stock, the Transfer Fee will be prorated based upon the number of shares transferred.

(2)    For purposes of calculating the Transfer Fee as set forth below, the "Gross Sales Price" is the value of any consideration received excluding the value of inventory and equipment.  At the time of closing, the transferee and Lessee shall execute an Affidavit of Consideration certifying the Gross Sales Price and assigning values to the equipment and inventory based on the last invoice from Lessor for the motor fuel and retail cost for other inventory.  If Lessor, in the exercise of reasonable judgment, disagrees with the equipment values, Lessor may require that the transferee obtain an appraisal of equipment.  Lessor shall provide the transferee with the names of 3 Member Appraisal Institute (M.A.I) appraisers.  If the appraised value on the equipment is greater than or equal to the assigned value by the transferee, Lessor shall pay for the appraisal, if the appraised value of the equipment is less than the assigned value, the transferee shall pay for the appraisal.  The appraisal will be conclusive for establishing the value of the equipment.

(3)    With the exception of a Transfer by Lessee's Designee as defined in the RSA, the amount of the Transfer Fee will be the greater of $6,500 or the amount arrived at by multiplying the difference between the base line Gross Sales Price (the price Lessee paid for the business originally) and the Gross Sales Price for the current Transfer by the applicable percentage below (which is based upon the year Lessee makes the Transfer).

     (i)   Less Than 3 Years at 35%
     (ii)  3 years to less than 6 years at 20%.
     (iii) 6 years to less than 9 years at 15%

> (iv) 9 years or more at 0%

> For any Transfer by Lessee's Designee, the Transfer Fee will be $6,500.

*See* attached <u>Plaintiffs' S.J. Exhibit 5</u>, ¶18e.

Inclusion of this "Transfer Fee" language in the RFL violates <u>Conn. Gen. Stat.</u> §§42-133m and 42-133*l*(f)(7).

Section 42-133m provides, in the relevant part, that any term which "prohibits the voluntary assignment of the franchise to which they are parties, or which requires the franchisor's consent to such assignment, is ineffective and void as contrary to public policy unless such term provides that consent may be or is reasonably withheld."

Section 42-133*l*(f)(7) provides that:

> (f) No franchisor, directly or indirectly, through any officer, agent or employee, shall do any of the following: (7) sell, rent or offer to sell to a franchisee any product or service for more than a fair and reasonable price;

The Plaintiffs do not claim that any transfer fee would be illegal, just a fee which is based upon a formula or is otherwise unrelated to any costs incurred by Motiva to affect the transfer. The "Transfer Fee" language in the RFL does not relate the fee imposed to any costs incurred by Motiva as a result of the proposed transfer. Further, the imposed fee, which can be as high as 35% of the sales price, is effectively a penalty for assigning a franchise which is freely assignable under Connecticut Law.

Furthermore, a critical review of the provision demonstrates that Motiva is attempting to profit from the <u>dealer</u>'s efforts to improve his or her franchise business.  Note that the calculation is based upon an increase in "Gross Sales price".

Through the terms of the Transfer Fee provision, Motiva makes no pretext about its goals.  The formula ignores the money the franchisee has spent to improve the franchise subsequent to his purchase of it.  At an absolute minimum, good faith would require the original sales price be adjusted to reflect additional equity, improvements and business growth created by the dealer.  Rather than reward strong and faithful efforts, Motiva imposes a penalty.  The better the dealer, the more value added and the greater profit for Motiva.

The Transfer Fee violates Section 42-133l(f)(7) because the calculation of that fee has no relation to any service provided by Motiva whatsoever.  Therefore the Transfer Fee is not a reasonable price for the service rendered by Motiva, in this case, none. Instead, Motiva is charging <u>the dealer</u> for service that <u>the dealer</u> performed, namely, increasing the value of the franchise business.

The Transfer Fee provisions also violate Section 42-133(m).  As previously stated, Section 42-133m and 42-133j set forth a legislative mandate that the alienation of Connecticut gasoline franchises must be free from unreasonable restraints.  The transfer fee as written, is unreasonable, it is not tied to any cost or burden incurred by

Motiva. Rather, it is nothing more than a penalty attached to a protected right of alienation. The payment of this penalty is an additional condition imposed by Motiva prior to granting its assent to transfer. The fee has no correlation to any potential risk that Motiva may be facing by the transfer nor is it based upon the sale price of the franchise. It is therefore contrary to Section 42-133m(a).

## VIII. Indemnification Language and the Limitation of Liability Provision in the RFL and the RSA Violate Connecticut Law

Motiva drafted and included indemnification provisions in both the RFL and the RSA and a limitation of liability provision in the RSA in violation of Connecticut law. The indemnification language at issue requires the retailer to indemnify the franchisor for "any claim for harm, injury, or death to any person, or damage to property or to the environment arising out of or in connection with any of the following matters:

> (1)  Retailer's performance or non-performance under this agreement;
> (2)  Any action or omission of Retailer or Retailer's employees, agents, contractors, assigns or third parties; and
> (3)  The operation of Retailer's business.
> Retailer's obligation to indemnify and defend extends to any claim caused by the concurrent or contributory negligence or fault of an indemnified party but not to any claim shown by final non-appealable judgment to have been caused by the indemnified parties' sole negligence or other defect in the products not caused or contributed to by any

17

negligence or fault of Retailer. . ."

See attached <u>Plaintiffs' S.J. Exhibits 3</u>, ¶20 and 5, ¶14.

Motiva also included a Limitation of Liability provision in the RSA which provides:

> LIMITATION OF LIABILITY.  Retailers sole and exclusive remedy for any claim arising from or in connection with an alleged failure of or defect in any Products sold by Seller to Retailer (whether the claim is for breach of contract or warranty or is under tort, strict liability, statute or otherwise) will be (a) at Seller's option, replacement of the failed, defective, or non-conforming Products or reimbursement of the purchase price thereof and (b) reimbursement of the reasonable cost of repair or replacement of any mechanical equipment or parts that are damaged directly by the use of such Products.  In no event will either party be liable to the other for any indirect, special, incidental, consequential or punitive damages arising under this Agreement whether under tort, contract, strict liability, warranty, statute, or otherwise.

See attached <u>Plaintiffs' S.J. Exhibit 3</u>, ¶17.

The Indemnification Language and the Limitation of Liability Provision are contrary to the purpose of Connecticut franchise law.  The Connecticut legislature enacted the law concerning petroleum product franchises "to avoid undue control of the dealer by suppliers."  <u>Conn. Gen. Stat.</u> §42-133j(a).  In order to help achieve this balance, Connecticut placed the burden to protect and indemnify <u>on Motiva</u>, and **not**

**upon the dealers**.  Conn. Gen. Stat. §42-133*l*(h) clearly places the burden upon

Motiva.  The Section provides that:

> (h) Every franchisor shall protect and save harmless its
> franchisee from financial loss and expense, including legal fees
> and costs, if any, arising out of any claim, demand, suit or
> judgment by reason of **defect in merchandise** or **methods** or
> **procedures** prescribed by the franchisor and performed by such
> franchisee, **except** for alleged negligence or willful misconduct of
> such franchisee.

Conn. Gen. Stat. §42-133*l*(h) (emphasis added).

Through the Indemnification Language and the Limitation of Liability Provision, Motiva

is improperly attempting to shift the legislatively imposed responsibility back to the

dealers.  This, again, is an attempt to circumvent the law and should not be allowed

by this Court.  The Plaintiffs do not contend that an indemnification limited to

negligence or <u>willful</u> misconduct would be illegal.  However, that is not the language

or intent of the provision.

     The Indemnification Language and the Limitation of Liability Provision effectively

requires the dealers to be responsible for Motiva, except for issues of Motiva's sole

negligence, also runs contrary to Connecticut common law that a party cannot relieve

its own negligence by contract.  *See*, Rodriguez v. Gilbertie, 33 Conn. Supp. 583, 584-

85 (1976).

## IX.    Minimum Quantities Clause in the RSA Violates Connecticut Law

Motiva drafted and included a Minimum Quantities requirement in the RSA in violation of Conn. Gen. Stat. Section 42-133*l*(f)(5).  Section 42-133*l*(f)(5) provides:

> (f) No franchisor, directly or indirectly, through any officer, agent or employee, shall do any of the following: . . . (5) impose unreasonable standards of performance upon a franchisee . . .

The Minimum Quantities requirement in the RSA provides, in part, as follows:

> "Seller shall sell and deliver to retailer and retailer shall purchase and accept from Seller the minimum quantities of products during each calendar month as identified in part I ("Minimum Quantities") Seller may, but is not obligated to, sell Retailer more than the Minimum Quantities.  Seller may adjust the Minimum Quantities pursuant to any applicable Federal or state mandatory or voluntary allocation program or in accordance with Article 19.  If Retailer fails to purchase the Minimum Quantities, Seller may take such action as Seller deems appropriate including, without limitation, exercising Seller's right to terminate or non-renew this Agreement under Article 23."

See, attached Plaintiffs' S.J. Exhibit 3, ¶2a. See also, Defendant's Second Amended Answer and Affirmative Defenses, ¶ 13.

This requirement imposes arbitrary standard of performance upon Plaintiffs. The minimum quantities requirement is not based on any prior purchases or prior demand, it also does not account for market conditions and other economic variables that affect each of the Plaintiffs' franchises and which are outside of Plaintiffs' control.  Indeed, the volume of fuel sold by any dealer is largely dependant upon the underlying cost of the fuel supply.   Under the Agreements, the cost of the fuel supply   is

exclusively controlled by Motiva. If Motiva does not allow the franchisee to be competitive with other gas stations on the street, then the franchisee cannot meet the volume limits set. As a result, the Agreements, as written, act as both a hammer and an anvil with which Motiva can control the day-to-day pricing of Plaintiffs' businesses. What volume performance is "reasonable" simply cannot be reduced to an equation or number, and certainly cannot be ascertained one, two, or three years in advance.

These issues were not effectively addressed when on or about June 18, 2001, Motiva gave notice to the plaintiffs that the RSA might be amended in the future to provide:

> Seller shall sell and deliver to retailer and retailer shall purchase and accept from Seller the minimum quantities of products during each calendar month as identified in part I ("Minimum Quantities") Seller may, but is not obligated to, sell Retailer more than the Minimum Quantities. Seller may adjust the Minimum Quantities pursuant to any applicable Federal or state mandatory or voluntary allocation program or in accordance with Article 19. If Retailer fails to purchase the Minimum Quantities, **Seller may in its sole discretion**, take such action as Seller deems appropriate including, without limitation, **(1) adjusting the Minimum Quantities if the failure was due to changed circumstances; or, (2)** exercising Seller's right to terminate or non-renew this Agreement under Article 23 **unless such failure was due to a reason beyond retailers reasonable control**.

See, attached Plaintiffs' S.J. Exhibit 4, ¶1. (emphasis added to changes).

The changes add essentially nothing to benefit the dealer because the revised terms continue to reserve to Motiva "the sole discretion" on any actions to be taken.

## X.    Attorney's Fees Section of Agreement is Contrary to Both the PMPA and Connecticut Law

The Attorney's Fee provisions of both the RSA and the RFL violate both the PMPA and Connecticut law. Both the RFL and the RSA in substance provide the following:

> ATTORNEYS FEES. Seller will be entitled to recover from Retailer reasonable attorney's fees and other legal costs Seller incurs in order to secure or protect the rights inuring to Seller under this Agreement, or to enforce the terms thereof.

*See*, attached Plaintiffs' S.J. Exhibit 3, ¶32 and 5, ¶29.

Section 2805(d)(3) of the PMPA provides:

> (d) Actual and exemplary damages and attorney and expert witness fees to franchisee; determination by court of right to exemplary damages and amount; attorney and expert witness fees to franchisor for frivolous actions

> (3) In any action under subsection (a) of this section, the court may, in its discretion, direct that reasonable attorney and expert witness fees be paid by the franchisee if the court finds that such action is frivolous.

Conn. Gen. Stat. §42-133n provides:

> (a) Any franchisee may bring an action for violation of sections 42-133l or 42-133m in the Superior Court to recover damages sustained by reason of such

> violation, which action shall be privileged in respect to its assignment for trial and, where appropriate, may apply for injunctive relief as provided in chapter 916. Such franchisee, if successful, shall be entitled to costs, including, but not limited to, reasonable attorneys' fees.

So, both the PMPA and Connecticut franchise law directly address the issue of responsibility for attorney's fees when bringing an action under their provisions. The attorney's fee terms of the Agreements attempt to avoid the legislative balance by forcing Plaintiffs to incur responsibility for legal costs that they would not otherwise be liable for under the law. The inclusion of the Attorney's Fee provisions is so contrary to the governing statutory law that it exhibits bad faith and an attempt by Motiva to assert its superior bargaining position in exactly the type of unfair process that both statutes were meant to remedy.

## XI.    RELIEF REQUESTED

Plaintiffs seek both declaratory and injunctive relief to remedy Motiva's actions complained about above. Specifically, Plaintiffs request this Court to declare that the terms of the Agreements, as discussed above, are illegal and unenforceable. Accordingly, this Court should also issue an injunction barring Motiva from including any of the offending terms of the Agreements, as discussed above, in any renewal franchise agreement and compelling Motiva to remove those terms from any existing

agreement.  Lastly, Plaintiffs seek costs and attorney's fees and any other such relief available to them under law and equity.

## XII.    <u>CONCLUSION AND PRAYER</u>

The fundamentals of this case are simple and uncontroverted.  Through its revised RFL and RSA, Motiva has attempted to place the Plaintiffs in the untenable position of having to accept the Agreements despite the fact that provisions in each document violated state and federal law, as detailed above.  Based on the summary judgment proof presented, Plaintiffs are entitled to summary judgment in their favor as to their claims against Motiva.

**FOR THESE REASONS**, Plaintiffs respectfully pray that the Court render summary judgment, and declare the franchise terms set forth in the RFL and the RSA to be illegal and in violation of Connecticut and federal law.

Further, Plaintiffs request that a final judgment be entered, in Plaintiffs favor, as to these claims.

The Plaintiffs further request that a trial date be set with respect to the remaining claims.

THE PLAINTIFFS,
HORACE BRUCE, ET AL

By: _____
John J. Morgan [ct. 13312]
BARR & LaCAVA
22 Fifth Street
Stamford, CT 06905
Tel:  (203) 356-1505
Fax: (203) 357-8397
JMorgan456@aol.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, via first class mail, postage prepaid, this 25th day of October, 2004 to the following counsel of record:

Paul D. Sanson, Esq.
Karen T. Staib, Esq.
Shipman & Goodwin, LLP
One Constitution Plaza
Hartford, CT 06103

John J. Morgan