

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HORACE BRUCE, ET AL., | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:00 CV 1831 (AWT) |
| | : | |
| v. | : | |
| | : | |
| MOTIVA ENTERPRISES, L.L.C., | : | |
| Defendant. | : | OCTOBER 25, 2004 |

**PLAINTIFFS' LOCAL RULE 56(a)1
STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

Pursuant to Local Rule of Civil Procedure 56(a)1, Plaintiffs provide the following statement of each material fact as to which there is no genuine issue to be tried.

1. Plaintiffs are individuals or corporations who operate Shell or Texaco Branded Service Station Franchises within the State of Connecticut. See, Defendant's Second Amended Answer and Affirmative Defenses, ¶1.

2. Defendant is a Delaware Limited Liability Company with a principal place of business in the State of Texas, which rents service station properties and supplies petroleum products to the Plaintiffs, within the State of Connecticut. See Defendant's Second Amended Answer and Affirmative Defenses, ¶3.

1

3.  By letter dated December 10, 1999, each of the Plaintiffs was provided a Retail Facility Lease and Retail Sales Agreement as well as certain ancillary documents which purported to be renewal agreements for the Plaintiffs' franchise relationships with Defendant. See attached <u>Plaintiffs' S.J. Exhibit 1</u>.

7.  Each of the Plaintiffs executed and returned the documents with a cover letter of protest or otherwise attempted to do so. See attached <u>Plaintiffs' S.J. Exhibit 2</u>.

8.  Motiva Enterprises, LLC refused to accept the letters of protest and insisted that the documents be executed notwithstanding the Plaintiffs' claims that portions of the document violated state and federal law. See attached <u>Plaintiffs' S.J. Exhibit 7</u>.

## THE MINIMUM QUANTITIES CLAUSE

9.  The Retail Sales Agreement provides, in part, as follows:

> "Seller shall sell and deliver to retailer and retailer shall purchase and accept from Seller the minimum quantities of products during each calendar month as identified in part I ("Minimum Quantities") Seller may, but is not obligated to, sell Retailer more than the Minimum Quantities. Seller may adjust the Minimum Quantities pursuant to any applicable Federal or state mandatory or voluntary allocation program or in accordance with Article 19. If Retailer fails to purchase the Minimum Quantities, Seller may take such action as Seller deems appropriate including, without limitation, exercising Seller's right to terminate or non-renew this Agreement under Article 23."

See attached Plaintiffs' S.J. Exhibit 3, ¶2a. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶13.

10.  On or about June 18, 2001, the <u>Defendant</u>s gave notice to the <u>Plaintiff</u>s that the Retail Sales Agreement might be amended in the future to provide:

> "Seller shall sell and deliver to retailer and retailer shall purchase and accept from Seller the minimum quantities of products during each calendar month as identified in part I ("Minimum Quantities") Seller may, but is not obligated to, sell Retailer more than the Minimum Quantities. Seller may adjust the Minimum Quantities pursuant to any applicable Federal or state mandatory or voluntary allocation program or in accordance with Article 19. If Retailer fails to purchase the Minimum Quantities, **Seller may in its sole discretion,** take such action as Seller deems appropriate including, without limitation, **(1) adjusting the Minimum Quantities if the failure was due to changed circumstances; or, (2)** exercising Seller's right to terminate or non-renew this Agreement under Article 23 **unless such failure was due to a reason beyond retailers reasonable control."** (emphasis added to changes).

See attached Plaintiffs' S.J. Exhibit 4, ¶1. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶13A.

**THE TRIAL FRANCHISE CLAUSE**

11.  The Retail Sales Agreement further provides, in pertinent part, as follows:

> "<u>Trial Franchise</u>. Except to the extent limited by applicable Law, if the Retailer desires to Transfer its interest in this Agreement to an individual or Business Entity that has not previously operated as a retailer of Seller's Products or of Seller's affiliates, then Retailer may be required to execute a mutual termination of this agreement and the proposed transferee may be required to execute a trial franchise agreement as a condition to Seller granting its consent to the Transfer."

See attached Plaintiffs' S.J. Exhibit 3, ¶22b. See also, <u>Defendant's Second</u>

3

Amended Answer and Affirmative Defenses, ¶14.

14. The Retail Facility Lease provides as follows:

> "Trial Franchise. Except to the extent limited by applicable law, if the Lessee decides to Transfer its interest in this Lease to an individual or Business Entity that has not previously operated as a retailer of petroleum products of Lessor or Lessor's affiliates, then Lessee may be required to execute a mutual termination of this Lease and the proposed transferee may be required to execute a trial franchise agreement as a condition to Lessor granting its consent to the transfer."

See attached Plaintiffs' S.J. Exhibit 5, ¶18b. See also, Defendant's Second Amended Answer and Affirmative Defenses, ¶17

## THE TRANSFER FEE CLAUSE

12. The Retail Sales Agreement further provides as follows:

> "Transfer Events. Without limiting the foregoing, the following events constitute a Transfer:
> (1)  Subject to Article 25, Retailer dies and Retailer's interest in this Agreement is transferred, whether by will or operation of Law;
> (2)  Retailer becomes bankrupt or insolvent, Retailer makes an assignment for the benefit of creditors, or a proceeding is instituted under the Bankruptcy Code, and, if it is an involuntary proceeding, and Retailer or other affected party has not had it dismissed within sixty days;
> (3)  A writ of attachment or execution is levied on this Agreement and is not removed by Retailer within thirty days;
> (4)  A receiver is appointed with authority to take possession of the Retailer's Station and is not removed within 60 days in any proceeding or Action to which Retailer is a party;
> (5)  If Retailer is a limited liability partnership or partnership, a withdrawal or any change of interest (voluntary, involuntary or by operation of Law) or of any partner or the dissolution of the

>       partnership;
>       (6)     If Retailer is a limited liability company or corporation, any dissolution, merger, consolidation or other reorganization or other arrangement having similar effect, or the Transfer by Retailer or any member or shareholder of 10% of the voting shares of the capital stock of retailer or of any lesser interest with cumulatively vests 10% or more of such voting shares in the transferee; and
>       (7)     If Retailer is composed of more than one person, any change of interest (voluntary, involuntary or by operation of Law) of any such person."

See attached Plaintiffs' S.J. Exhibit 3, ¶22c. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶15.

15.     The Retail Facility Lease further provides as follows:

>       "<u>Transfer Fee</u>.     (1)     Except for lessees in New Hampshire or Virginia which will be governed by applicable state Law, to the maximum extent permitted by Law, Lessee shall pay to Lessor a franchise transfer fee ("Transfer Fee") in the form of a bank cashier's check prior to or at the closing of any Transfer. With the exception of a Transfer in the event of Lessee's death, long term disability, or sickness (6 months or more) that prevents Lessee from operating the business at the premises, the Transfer Fee is applicable to all Transfers, including a Transfer to the Lessor. If the Lessee Transfers any stock, the Transfer Fee will be prorated based upon the number of shares transferred.
>       (2)     For purposes of calculating the Transfer Fee as set forth below, the "Gross Sales Price" is the value of any consideration received excluding the value of inventory and equipment. At the time of closing, the transferee and Lessee shall execute an Affidavit of Consideration certifying the Gross Sales Price and assigning values to the equipment and inventory based on the last invoice from Lessor for the motor fuel and retail cost for other inventory. If Lessor, in the exercise of reasonable judgment, disagrees with the equipment values, Lessor may require that the transferee obtain an appraisal of equipment. Lessor shall provide the transferee with the names of 3

>Member Appraisal Institute (M.A.I) appraisers. If the appraised value on the equipment is greater than or equal to the assigned value by the transferee, Lessor shall pay for the appraisal, if the appraised value of the equipment is less than the assigned value, the transferee shall pay for the appraisal. The appraisal will be conclusive for establishing the value of the equipment.
>(3)    With the exception of a Transfer by Lessee's Designee as defined in the RSA, the amount of the Transfer Fee will be the greater of $6,500 or the amount arrived at by multiplying the difference between the base line Gross Sales Price (the price Lessee paid for the business originally) and the Gross Sales Price for the current Transfer by the applicable percentage below (which is based upon the year Lessee makes the Transfer).
>
>>(i)  Less Than 3 Years at 35%
>>(ii) 3 years to less than 6 years at 20%.
>>(iii) 6 years to less than 9 years at 15%
>>(iv) 9 years or more at 0%
>
>>For any Transfer by Lessee's Designee, the Transfer Fee will be $6,500.

See attached Plaintiffs' S.J. Exhibit 5, ¶18c. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶18.

**THE RELEASE**

13.    The Retail Sales Agreement further provides as follows:

>Release. The parties release each other, their respective members, subsidiaries, affiliates and joint venture partners, and their respective directors, officers, employees, and agents as of the effective date of this agreement and to the extent permitted by law, from all claims which each party may have against the other (whether or not now known) arising directly or indirectly out of or in connection with any prior agreement, excepting, however, claims of Seller against Retailer for indebtedness, reimbursement, or indemnification. Retailer

6

> understands that this release waives any limitation with regard to a general release that may exist under applicable law and that even if Retailer or Seller should later become aware of a claim arising out of events or circumstances not now known or suspected to exist, retailer or seller, as the case may be will not be able to assert such claim against the other.

See attached Plaintiffs' S.J. Exhibit 3, ¶31. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶16.

14.   The Retail Facility Lease further provides as follows:

> "Release: The Parties release each other, their respective members, subsidiaries, affiliates and joint venture partners, and their respective directors, officers, employees, and agents as of the effective date of this lease and to the extent permitted by law, from all claims which party may have against the other (whether or not now known), arising directly or indirectly out of or in connection with any prior lease, excepting, however, claims of Lessor against Lessee for indebtedness, reimbursement, or indemnification. Lessee understands that this release waives any limitation with regard to a general release that may exist under applicable law and that even if Lessee or Lessor should later become aware of a claim arising out of events or circumstances not now known or suspected to exist, Lessee or Lessor, as the case may be will not be able to assert such claim against the other."

See attached Plaintiffs' S.J. Exhibit 5, ¶28. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶19.

## **THE ATTORNEY FEE CLAUSE**

16.   Both The Retail Facility Lease and The Retail Sales Agreement in substance provide the following, in pertinent part:

> ATTORNEYS FEES. Seller will be entitled to recover from Retailer reasonable attorney's fees and other legal costs Seller incurs in order to secure or protect the rights inuring to Seller under this Agreement, or to

7

enforce the terms thereof.

See attached Plaintiffs' S.J. Exhibit 3, ¶32 and 5, ¶29. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶21.

17. On or about June 18, 2001, the Defendant advised the Plaintiffs that The Retail Facility Lease and the Retail Sales Agreement might be amended to provide, in substance, as follows:

> ATTORNEYS FEES. **The Prevailing Party** will be entitled to recover from **the other party** reasonable attorney's fees and other legal costs **the party** incurs in order to secure or protect the rights inuring to **the prevailing party** under this Agreement, or to enforce the terms thereof. (emphasis added to changes).

See attached Plaintiffs' S.J. Exhibit 4, ¶6 and 6, ¶8. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶21A.

**<u>INDEMNIFICATION AND LIMITATION OF LIABILITY</u>**

18. The Retail Sales Agreement further provides the following:

> LIMITATION OF LIABILITY. Retailers sole and exclusive remedy for any claim arising from or in connection with an alleged failure of or defect in any Products sold by Seller to Retailer (whether the claim is for breach of contract or warranty or is under tort, strict liability, statute or otherwise) will be (a) at Seller's option, replacement of the failed, defective, or non-conforming Products or reimbursement of the purchase price thereof and (b) reimbursement of the reasonable cost of repair or replacement of any mechanical equipment or parts that are damaged directly by the use of such Products. In no event will either party be liable to the other for any indirect, special, incidental, consequential or punitive damages arising under this Agreement whether under tort, contract, strict liability, warranty, statute, or otherwise.

See attached Plaintiffs' S.J. Exhibit 3, ¶17. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶22.

19.  Both the Retail Sales Agreement and the Retail Facility Lease, contain indemnification provisions which require the retailer to indemnify the franchisor for "any claim for harm, injury, or death to any person, or damage to property or to the environment arising out of or in connection with any of the following matters:

  (1) Retailer's performance or non-performance under this agreement;

  (2) Any action or omission of Retailer or Retailer's employees, agents, contractors, assigns or third parties; and

  (3) The operation of Retailer's business.

Retailer's obligation to indemnify and defend extends to any claim caused by the concurrent or contributory negligence or fault of an indemnified party but not to any claim shown by final non-appealable judgment to have been caused by the indemnified parties' sole negligence or other defect in the products not caused or contributed to by any negligence or fault of Retailer."

See attached Plaintiffs' S.J. Exhibit 3, ¶20 and 5, ¶14. See also, <u>Defendant's Second Amended Answer and Affirmative Defenses</u>, ¶23.

          THE PLAINTIFFS,
          HORACE BRUCE, ET AL

          By: _____
          John J. Morgan [ct. 13312]
          BARR & LaCAVA
          22 Fifth Street
          Stamford, CT 06905
          Tel: (203) 356-1505
          Fax: (203) 357-8397
          JMorgan456@aol.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, via first class mail, postage prepaid, this 25th day of October, 2004 to the following counsel of record:

Paul D. Sanson, Esq.
Karen T. Staib, Esq.
Shipman & Goodwin, LLP
One Constitution Plaza
Hartford, CT 06103

_____
John J. Morgan