UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HORACE BRUCE, ET AL., | : | CIVIL ACTION NO. |
| | : | 3:00 CV 1831 (AWT) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MOTIVA ENTERPRISES LLC, | : | |
| | : | |
| Defendant. | : | FEBRUARY 14, 2005 |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF MOTIVA'S CROSS-MOTION FOR JUDGMENT**

Defendant Motiva Enterprises LLC ("Motiva") hereby submits this Memorandum of Law in opposition to Plaintiffs' Motion for Summary Judgment dated October 25, 2004, and in support of Motiva's Cross-Motion for Summary Judgment.

**I.   INTRODUCTION**

This action for declaratory and injunctive relief was brought in 2000 by approximately 40 Motiva gasoline franchisees, who challenged the legality of eight provisions of the then-current franchise agreements (the "Old Agreements"). Plaintiffs alleged that these provisions violated the Connecticut Franchise Act, the Petroleum Marketing Practices Act ("PMPA"), the Connecticut Gasoline Dealers Act, and the Connecticut Unfair Trade Practices Act ("CUTPA").

In 2001, Motiva stopped offering the Old Agreements and thereafter offered new contracts (the "New Agreements") that eliminated two of the challenged provisions (release and product liability) and substantially modified five others (minimum quantities, attorneys'

fees, trial franchise, transfer fee and maintenance).[1] Plaintiffs amended their complaint in May of 2003[2] to allege diversity jurisdiction and to add challenges to two provisions of the New Agreement (minimum quantities and attorneys' fees).[3]

Motiva now moves for summary judgment dismissing all of the claims of the Second Amended Complaint ("Complaint") in their entirety for the following reasons:

(1) Plaintiffs' claims for declaratory and injunctive relief as to the provisions of the New Agreements are not ripe for review. Plaintiffs have not alleged in their Complaint or demonstrated in their motion for summary judgment that any of these provisions have actually been applied to them or affected the operation of their businesses. Accordingly, Plaintiffs' claims do not present a live case or controversy.

(2) Plaintiffs' claims regarding the provisions of the Old Agreements are effectively moot, because only one franchisee remains bound by the Old Agreements. The only relevant provisions would be those of the New Agreements, and only as to those 20 or so Plaintiffs who are, or are becoming, parties to them.

(3) Even if any of plaintiffs' claims were sufficiently real and immediate to establish justiciability under the Declaratory Judgment Act, the Court should exercise its discretion against review because no useful purpose would be served by requiring the Court to expend its resources in the academic exercise of analyzing the enforceability of 10 contract provisions under the 16 different state and federal statutory provisions upon which Plaintiffs rely.

---

[1] The eighth provision challenged by plaintiffs, the general indemnification provision, remained the same.
[2] Because a Motion to Dismiss has been pending since May 2003, Motiva has not filed an amended answer to Plaintiffs' Second Amended Complaint. See Fed. R. Civ. P. 12(a)(4). However, in the interests of clarity and to update the Court, Motiva today separately files its Answer and Special Defenses to Plaintiffs' Second Amended Complaint.
[3] See Second Amended Complaint, dated May 1, 2003 (the "Complaint"), at ¶¶ 1A, 2A, 4A, 13A, 21A, 30A.

(4) Plaintiffs' claims under the Connecticut Franchise Act, the PMPA, the Connecticut Gasoline Dealers Act, and CUTPA should be dismissed because they have failed to allege or establish essential elements of such claims.

Motiva also opposes Plaintiffs' Motion for Summary Judgment which, although purporting to address all five counts of the Second Amended Complaint,[4] nowhere addresses Counts III and V or the maintenance provision challenged in Paragraph 20 of the Count I. For the reasons stated above, Plaintiffs' claims should be dismissed in their entirety. If, however, the Court reaches the merits of Plaintiffs' claims, certain causes of action should be dismissed for failure to state a claim, while others involve genuine disputes of material fact that make summary judgment inappropriate.[5]

## II. STATEMENTS OF FACTS[6]

Motiva hereby incorporates its Local Rule 56(a)(1) Statement and its Local Rule 56(a)(2) Statement, attached hereto.

## III. LEGAL STANDARD

### A. Standard for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[4] See Pl. Memorandum in Support of Motion for Summary Judgment (Plaintiffs' MSJ) at 3.
[5] In this respect, Motiva hereby renews its pending Motion to Dismiss the Complaint.
[6] The Affidavit of John F. Kuschman in support of Motiva's Opposition to Plaintiffs' Motion for Summary Judgment and Motiva's Motion for Summary Judgment, and Motiva's Local Rule 56(a)(1) and 56(a)(2) Statements ("Kuschman Affidavit") is attached hereto as Exhibit 1. Documents supporting factual averments in the Kuschman Affidavit are attached thereto as lettered exhibits.

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**B.    Standard for Dismissal under Federal Rule 1**

Dismissal is warranted if it is clear that no relief can be granted under any set of facts that the plaintiff can prove consistent with the allegations in the complaint. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Frasier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991). Federal Rule 12(c) permits a motion on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c).

**IV.    LEGAL ARGUMENTS**

**A.    Plaintiffs' Claims Are Either Not Ripe for Review or Moot, and Therefore Do Not Present a Case or Controversy.**

Over the past five years, none of the eight provisions challenged in the Old Agreement has triggered any injury to any of the Plaintiffs. The imminent harm Plaintiffs anticipated in 2000 never came to pass. The modified versions of the provisions remaining in the New Agreements (attorneys' fees, minimum quantities, trial franchise, transfer fee, and maintenance) and the general indemnification provision (which is unchanged) show no greater likelihood of affecting their businesses. And although Plaintiffs have cursorily added a claim of diminution of value in their franchises to create diversity jurisdiction, they have not added any claim for damages to their Complaint—a telling omission. Complaint at ¶ 30A. As a result, Plaintiffs' claims do not present an actual case or controversy, a fundamental requirement in any federal case.

Plaintiffs cannot show that they "personally ha[ve] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Tasini v. New York Times Co. Inc., 184 F. Supp. 2d 350, 355(S.D.N.Y. 2002) (citing Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S. Ct. 1601 (1979)). An "actual controversy" exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). Plaintiffs do not have a ripe claim because they do not allege a threatened injury that is sufficiently likely to occur, or to present a direct and immediate impact, as a result of Motiva's alleged inclusion of the challenged provisions in the Agreements. Alternatively, their claims are moot because they relate to provisions in the Agreements that no longer apply to them.

### 1. Plaintiffs' claims are not ripe, and therefore present no "actual controversy."

No circumstances have yet arisen as a result of any of the challenged provisions which would present the Court with a controversy to adjudicate. Plaintiffs' grievances remain entirely hypothetical. For example, Plaintiffs spend five pages of their MSJ decrying as illegal the trial franchise provision of the Old Agreements, which required, in situations where the franchisee wanted to sell its franchise to a person or entity that Motiva had never dealt with before, that the franchisee and Motiva execute a mutual termination so that Motiva could enter

the new relationship on a trial basis. Plaintiffs' MSJ at 9-13[7]. Nowhere in the MSJ or in the Complaint do Plaintiffs allege that any Plaintiff has attempted to sell its franchise, much less any allegation that a Plaintiff was forced to sell to a trial franchisee rather than a regular franchisee at a reduced price or that any Plaintiff has recovered a reduced purchased price for the sale of its franchise to a regular franchisee because of the inclusion of this provision.

Nor are there specific allegations that any of the other challenged provisions – minimum quantities (both versions), maintenance, attorneys' fees (both versions), product liability or general indemnification – have, in fact, acted to injure any Plaintiff in any manner. To present an actual controversy a claim must be ripe; that is, the threatened injury should be sufficiently likely to occur or to present a direct and immediate impact, as opposed to nebulous or contingent. Dow Jones & Co., v. Harrods, 237 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2002). In particular:

> [A] touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather where the feared legal consequence remains a mere possibility, or even a probability of some contingency that may or may not come to pass.

Id. See also Olin, 5 F.3d at 17 (finding declaratory relief premature to ascertain indemnification liabilities of two parties to a contract where no claims had yet been raised against either: "Whether Olin someday will be held subject to environmental liability at some unknown third-party site is speculative. Therefore, whether Conaleo should be required to indemnify Olin for such liability should it ever arise is not a question of 'sufficient immediacy

---

[7] The New Agreements limit the application of this provision to individuals and entities with no experience within the last five years with a major refiner. See Exhibit A at ¶ 17(b).

and reality' to warrant the issuance at this time of a declaratory judgment").

As in <u>Dow Jones</u> and <u>Olin</u>, the Plaintiffs are looking for an advisory opinion on the various contract provisions when in real life no actual conflicts have actually been created by any of the provisions. Plaintiffs' entire Complaint, therefore, should be dismissed as unripe.

### 2. Certain claims are moot as to certain Plaintiffs and should therefore be dismissed for want of an "actual controversy."

The release and product liability provisions, on which the Plaintiffs spend seven pages of their MSJ arguing, will soon apply to only one Plaintiff. <u>See</u> Motiva's Local Rule 56(a)(1) Statement at ¶ 7, 41-59. The old attorneys' fees provision and the old minimum quantities provision, which have been eliminated from the Agreements, have likewise been rendered moot. <u>Id.</u> at ¶ 8, 9. Only seven plaintiffs remain on the Old Agreements and all but one of them is in the process of switching to the New Agreements. <u>Id.</u> at 41-59. The only relevant provisions therefore (if a controversy were to arise at some point) would be those of the New Agreements.

"A litigant may not use the declaratory judgment statute to secure judicial relief of moot questions." <u>Christopher P. v. Marcus</u>, 915 F.2d 794, 802 (2d Cir. 1990) (denying as moot requested declaratory judgment that a particular school – from which the plaintiff had since voluntarily withdrawn – was subject to and therefore had to proceed with the plaintiff in accordance with the Assistance for Education of All Handicapped Children Act). Where the issue is rendered moot and the remedy sought is a mere declaration of the law without implications for practical enforcement upon the parties, the case is properly dismissed. <u>Browning Debenture Holders' Comm. v. DASA Corp.</u>, 524 F.2d 811, 817 (2d Cir. 1975)

(affirming dismissal of claim for declaratory relief as moot, where, in addition to failing to state a claim under the securities fraud statute concerning which they sought declaratory judgment, plaintiffs also requested a declaration that would have had no practical effect on the parties, as the assets in question had been sold). See also Topps Chewing Gum, Inc. v. Fleer Corp., 799 F.2d 851, 858 (2d Cir. 1986) (ordering dismissal of counterclaim for declaratory judgment, where requested declaration as to whether playing card product was within Topps' exclusive rights under a given contract became moot because that particular product was no longer being sold).

The Court should therefore dismiss as moot all claims by Plaintiffs that are no longer franchisees and all claims as to the Old Agreements that do not apply to the New Agreements for Plaintiffs now subject to the New Agreements.

### B.    The Court should exercise its broad discretion under the DJA not to entertain Plaintiffs' claims for declaratory judgment.

Even if any of Plaintiffs' claims were sufficiently real and immediate to create justiciability under the DJA, the Court should nonetheless exercise its "unique and substantive discretion" to decline to review their claims. See Wilton v. Seven Falls Company, 515 U.S. 277, 282, 289-90, 115 S. Ct. 2137 (1995) (upholding district court's exercise of discretion under DJA not to entertain declaratory claims). The DJA is an enabling act which "confers a discretion on the courts, rather than an absolute right upon the litigant." Id., 515 U.S. at 287. "The DJA does not create a source of substantive rights and imposes no duty upon the court to grant its remedy." Dow Jones, 237 F. Supp. 2d at 431. A decision not to entertain an action for declaratory judgment therefore is reviewed deferentially, under the abuse of discretion

standard. <u>Dow Jones & Co. v. Harrods Ltd.</u>, 346 F.3d 357, 360 (2d Cir. 2003) (affirming district court's decision not to exert jurisdiction under the DJA because claims were not ripe).

In determining whether to entertain a declaratory judgment action, a court is guided by the following five factors:

1. whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved;

2. whether a judgment would finalize the controversy and offer relief from uncertainty;

3. whether the proposed remedy is being used for "procedural fencing" or a "race to res judicata";

4. whether judgment would increase friction between legal systems or encroach on the domain of a state or foreign court; and

5. whether there is a better or more effective remedy.

<u>See</u> <u>Dow Jones</u>, 346 F.3d at 359-60.

Here, no useful purpose would be served by a declaratory judgment as to the legality and enforceability of the 10 contract provisions in question under the 16 state and federal statutory provisions (sometimes conflicting) upon which Plaintiffs rely. Rather, the exercise would be almost entirely academic in these circumstances since Motiva has already addressed Plaintiffs' concerns, and nearly all of the remaining Plaintiffs have signed or are in the process of signing Motiva's New Agreements. The practical impact of any such decision would be minimal, given the fact that no damages have been alleged beyond a conclusory allegation of diminution of value, which alleged injury would disappear on its own if the trial franchise provision were held void. Moreover, as detailed above, the opinions sought by Plaintiffs are advisory in nature, since all of Plaintiffs' claims are either unripe or moot. At this point,

Plaintiffs' continued insistence on declaratory and injunctive relief amounts to a waste of judicial resources. Dismissal of this case by the Court under its DJA discretion would therefore be appropriate.

> **C.  Plaintiffs' Counts II, III, IV and V should be dismissed under Fed. R. Civ. P. 12(c) and summary judgment should therefore be denied to Plaintiffs on Counts II and IV.**

Although Plaintiffs' MSJ states that it addresses all five counts, in fact, Count III and Count V, as well as the maintenance provision in Count I, are not raised in Plaintiffs' MSJ. Motiva therefore does not "oppose" Plaintiffs' MSJ as to the absent two counts and absent provision since Plaintiffs have failed to raise them, but does affirmatively challenge Counts III and V and the maintenance provision of Count I.

> **1.  Plaintiffs cannot state a claim for relief under the Connecticut Unfair Trade Practices Act in Count V.**

Plaintiffs have failed to state a claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA") because they have failed to allege that they have suffered an "ascertainable loss." As a threshold matter, a party cannot sustain a claim for damages or equitable relief under CUTPA § 42-110g without presenting evidence that it has sustained an "ascertainable loss." Gould v. National Westminster Bank, U.S.A., No. 3:99 CV 01892 (EBB), 2000 U.S. Dist. LEXIS 13699, at **2, 6-7 (D. Conn. 2000) (finding no "ascertainable loss" presented where alleged loss was the result of an appraisal of property as one large lot instead of as a potential subdivision, and where, among other things, the valuation of the lot would have been speculative at the time of trial). While the ascertainable loss requirement does not require proof of a specific amount of money damages, a party must

demonstrate "a deprivation, detriment [or] injury that is capable of being discovered, observed or established." Lorenzetti v. Jolles, 120 F. Supp. 2d 181, 186-87 (D. Conn. 2000) (finding sufficient evidence of "ascertainable loss" where the jury heard evidence that the plaintiff would have been able to buy property adjoining his own if the defendant bank had not egregiously reneged on a loan agreement).

In this case, as detailed above in the section on ripeness, Plaintiffs have failed to allege that they have suffered any loss at all to date. Nowhere in the Complaint do Plaintiffs indicate how they have been injured by being parties to the challenged contract provisions. The only specific injury alleged at all in the Complaint is the conclusory statement in Paragraph 30A of Count I, with no supporting facts, that the presence of the trial franchise provision diminishes the value of any franchise by $75,000. That claim, however, is not part of the CUTPA claim at all. See Complaint, Count V (only incorporating Paragraphs 1-23 and 26-28 of Count I into Count V). Absent an allegation and evidence of an ascertainable loss, Plaintiffs cannot state a CUTPA claim and the Court should enter judgment in Motiva's favor on Count V. The Court should therefore dismiss Count V pursuant to Federal Rule 12(c).

### 2. Plaintiffs cannot state a claim for relief under the PMPA in Counts II, III and IV.

In order to state a claim under the PMPA, a franchisee must allege as a threshold matter that a franchisor has terminated or non-renewed its franchise in violation of PMPA §§

2802 or 2803[8]. See, e.g., Dersch Energies, Inc. v. Shell Oil Co., 314 F.3d 846, 857-58 (7th Cir. 2002) ("[A] franchisee may only maintain a civil action under the PMPA for violations of § 2805(f)(1) if those violations constitute a nonrenewal of its franchise relationship under § 2802 or 2803"); see also Meghani v. Shell Oil Co., 115 F. Supp. 2d 747 (S.D. Tex. 2000), aff'd, 273 F.3d 1098 (5th Cir. 2001). Nowhere in Plaintiffs' Complaint or MSJ do they make any claim that Motiva initiated any termination or non-renewal proceeding against any Plaintiff in violation of the PMPA. Because Plaintiffs cannot meet this threshold test, Plaintiffs have failed to state a claim under the PMPA in Counts II, III and IV, which must therefore be dismissed under Federal Rule 12(c).

### 3. Plaintiffs cannot state a claim in Count IV that that the attorneys' fees provisions violate the PMPA or Conn. Gen. Stat. 42-133n.

Contrary to Plaintiffs' contention in Count IV, there is no language in either 15 U.S.C. § 2805(d)(3) or Connecticut General Statutes § 42-133n(a) that would indicate that parties are prohibited from separately contracting additional terms concerning attorneys' fees beyond those covered by the statutes. Nor do Plaintiffs cite to any authority in their Motion for Summary Judgment to that effect. The plain language of 15 U.S.C. § 2805(d)(3), a specific grant of discretion to the court to award attorneys' fees in derogation of the American Rule that each party will bear its own costs in a lawsuit regardless of the outcome, simply states:

---

[8] Nonrenewal is defined under the PMPA as failure by the franchisor to reinstate, continue or extend the franchise relationship with a franchisee "at the conclusion of the term, or on the expiration date, stated in the relevant franchise." See 15 U.S.C. § 2801(14). Termination includes the cancellation of the franchise relationship; see 15 U.S.C. § 2801(17); and generally concerns where such cancellation occurs prior to the conclusion of the term or expiration date. See § 2802(a)(1). The permissible grounds and procedures for termination and nonrenewal are set forth in §§ 2802-2804. § 2805(a) provides for the maintenance of a civil action by franchisee against franchisor: "[i]f a franchisor fails to comply with the requirements of section 2802 or 2803 of this title.

> In any action under subsection (a), the court may, in its discretion, direct that reasonable attorney and expert witness fees be paid by the franchisee if the court finds that such action is frivolous.

15 U.S.C. § 2805(d)(3). The PMPA also contains a provision granting more generous attorneys' fees to a prevailing franchisee:

> If the franchisee prevails in any action under subsection (a), such franchisee shall be entitled--...(C) to reasonable attorney and expert witness fees to be paid by the franchisor, unless the court determines that only nominal damages are to be awarded to such franchisee, in which case the court, in its discretion, need not direct that such fees be paid by the franchisor.

15 U.S.C. § 2805(d)(1)(C). Likewise, the Connecticut Franchise Act creates a right, not present at common law, to attorneys' fees to a prevailing franchisee:

> Any franchisee may bring an action for violation of sections 42-133l or 42-133m in the Superior Court to recover damages...Such Franchisee, if successful, shall be entitled to costs, including, but not limited to, reasonable attorneys' fees.

Conn. Gen. Stat. § 42-133n(a). The Connecticut statute does not provide for a judicial award of attorneys' fees to the prevailing franchisor. While these two acts certainly create statutory rights not found at common law, they do not, by their terms, preempt or prohibit the parties from making additional contractual provisions on the subject.

As Plaintiffs concede in their MSJ, the Second Circuit narrowly limits the scope of preemption of the PMPA over state law to the grounds for termination and nonrenewal and the notice requirements therefore. Plaintiffs' MSJ at 5-6. See also Bellmore v. Mobil Oil Corp., 783 F. 2d 300, 304-05 (2d Cir. 1986) (same, and citing legislative history with approval: "to the extent that the provisions of title I do not apply to an aspect of the franchise relationship, state laws dealing with such aspects of the relationship are not preempted"). In Bellmore, the Court found that the Connecticut franchise statute's additional remedial provision requiring

- 13 -

payment for goodwill to the terminated franchisee, despite containing a significantly longer notice requirement than the PMPA notice requirements, nonetheless was not preempted by the PMPA. Id. at 305. State statutes or common law expanding other available remedies, such as additional attorneys' fees provisions, would logically not be preempted either.

Because the PMPA does not preempt state contract law on the issue of contracting for attorneys' fees and because neither the PMPA nor the Connecticut Franchise Act bar additional contractual provisions concerning attorneys' fees, Plaintiffs have not stated a claim in Count IV. Judgment should therefore enter in Motiva's favor as a matter law on Count IV.

### 4. Plaintiffs cannot state a claim in Count I that the transfer fee provision violates Conn. Gen. Stat. §§ 42-133m or 42-133*l*(f)(7).

Plaintiffs attack the rationale for Motiva's inclusion of the transfer fee provision in the Old Agreements, but neither of the statutes they cite prohibits such a transfer fee. Plaintiffs' MSJ at 15-17. The transfer fee provision challenged[9] is simply not addressed by Connecticut General Statutes § 42-133m. The imposition of a fee on a transfer neither "prohibits assignment" nor does it "require franchisor's consent" to assignment. See Plaintiffs' MSJ at 15. While the existence of the transfer fee provision affects the economics of an assignment, Plaintiffs have not and cannot allege that the provision is an exertion of Motiva's unfettered discretion to unreasonably prevent the occurrence of assignments. Section 42-133m therefore does not apply.

The second statute Plaintiff cites is also inapplicable to the transfer fee provision. Connecticut General Statutes Section 42-133*l*(f)(7) prohibits the franchisor from selling, renting or offering to sell any product or service to a franchisee at an unfair, unreasonable

price. Conn. Gen. Stat. § 42-133*l*(f)(7). Plaintiffs themselves argue in effect that Section 42-133*l*(f)(7) does not apply, because no services or products are being sold, rented or offered for sale by Motiva:

> The Transfer Fee violates Section 42-133*l*(f)(7) because the calculation of that fee <u>has no relation to any service provided by Motiva whatsoever</u>. Therefore, the Transfer Fee is not a reasonable price <u>for the service rendered by Motiva</u>, in this case, <u>none</u>.

Plaintiffs' MSJ at 16 (emphasis added). Logically, if Motiva is not charging the fee for selling a service to the franchisee, then the statute does not apply. Plaintiffs therefore have not raised a viable claim that the transfer fee provision is illegal under those statutes and their claim should be dismissed pursuant to federal Rule 12(b)(6) and their MSJ on that claim denied.

> **D.  Questions of material fact exist which would prevent disposition of Counts I and IV in Plaintiffs' favor.**
>
> > **1.  Questions of material fact exist as to whether the minimum quantities provisions impose an "unreasonable standard of performance" under Conn. Gen. Stat. 133*l*(f)(5).**

Plaintiffs seek summary judgment on their claim in Count I that the minimum quantities provisions in both the Old Agreements and (as modified) in the New Agreements impose an "unreasonable standard of performance" on Plaintiffs in violation of Connecticut General Statutes Section 42-133*l*(f)(5). Plaintiffs' MSJ at 20-22. Without any evidentiary basis to support their analysis, Plaintiffs baldly assert:

> This requirement imposes arbitrary standard [sic] of performance upon Plaintiffs. The minimum quantities requirement is not based on any prior purchases or prior demand, it also does not account for market conditions, and other economic variables . . . If Motiva does not allow the franchisee to be competitive with other gas stations on the street, then the franchisee cannot meet the volume limits set.

---

[9] Motiva has modified this provision as to stock transfers in the New Agreements. <u>See</u> Exhibit A at ¶ 17(e)(3).

Plaintiffs' MSJ at 20-21. Motiva's supporting affidavit attached hereto presents testimony to challenge Plaintiffs' incorrect and unsupported statements. Motiva sets its minimum quantities in good faith based on a percentage of historical volumes at individual stations. See Motiva's Local Rule 56(a)(1) Statement at ¶ 9 and Kuschman Affidavit at 15. Since Motiva has raised factual questions which are material in that they counter the assertion that Motiva's provision imposes an arbitrary and unreasonable standard of performance, Plaintiffs' MSJ as to the minimum volumes provision raised in Count I must therefore be denied.

> 2. **Questions of material fact exist in Count IV as to whether Motiva dealt with the Plaintiffs "in good faith" under Conn. Gen. Stat. 133*l*(f)(6) or imposed a "standard of conduct" under Conn. Gen. Stat. 133*l*(f)(8) that was not "reasonable and necessary."**

To the extent the Court chooses not to grant Motiva summary judgment on Count IV (attorneys' fees), the Court should nonetheless deny Plaintiffs' MSJ on that Count, because questions of material fact exist as to whether Motiva acted in "good faith" and whether it imposed a "standard of conduct" that was not "reasonable and necessary."

Plaintiffs claim Motiva's inclusion of the attorneys' fees provisions in the Old and New Agreements was done in violation of Conn. Gen. Stat. § 42-133*l*(f)(6), which states that "No franchisor . . . shall . . .(6) fail to deal in good faith with a franchisee." Conn. Gen. Stat. § 42-133*l*(f)(6). Plaintiffs allege no specific facts indicating Motiva acted in bad faith. On the contrary, Motiva positively asserts that it did not fail to act in good faith. See Motiva's Local Rule 56(a)(1) Statement, ¶ 8; Kuschman Affidavit at ¶ 16. Questions of intent are issues of fact which cannot be resolved as a matter of law, making summary judgment inappropriate.

Similarly, a question of material fact exists here as to Plaintiffs' claim under Conn. Gen. Stat. § 42-133*l*(f)(8):

> No franchisor . . . shall . . . (8) impose on a franchisee by contract, rule or regulation, whether written or oral, any standard of conduct unless the franchisor, his agents or representatives sustain the burden of proving such to be reasonable and necessary.

Conn. Gen. Stat. § 42-133*l*(f)(8). Motiva rejects the Plaintiffs' characterization of an attorneys' fees provision as imposing a "standard of conduct." It is not at all clear how the provision is expected to impact the comportment of the franchisee. To the extent providing for attorneys' fees to the franchisor or to the prevailing party is deemed "conduct," Motiva asserts that such provision is reasonable and necessary to protect its interests. See Motiva's Local Rule 56(a)(1) Statement at ¶ 8; Kuschman Affidavit at ¶ 16.

## V.     CONCLUSION

For all of the foregoing reasons, Motiva requests that the Court deny Plaintiffs' Motion for Summary Judgment in its entirety and that the Court grant Motiva's Motion for Summary Judgment in its entirety.

THE DEFENDANT,
MOTIVA ENTERPRISES LLC,


By */s/ Alexandra M. McHugh*
Paul D. Sanson
Fed. Bar No. ct05477
Alexandra M. McHugh
Fed. Bar No. ct22428
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5000
Facsimile: (860) 251-5219
E-mail: psanson@goodwin.com
E-mail: amchugh@goodwin.com
Its Attorneys

393682 v.02 S2