## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HORACE BRUCE, ET AL.,                 :      CIVIL ACTION NO.
        Plaintiffs,                       :      3:00 CV 1831 (AWT)
                             :
      v.                                  :
                             :
MOTIVA ENTERPRISES LLC,               :
        Defendant.                        :      MAY 2, 2005

## PLAINTIFFS' OBJECTION TO MOTION FOR JUDGMENT
## AND REPLY TO OBJECTION

The Plaintiffs hereby object to Motiva's Motion For Judgment and reply to objections contained therein and respectfully submit that the Plaintiffs' Motion For Summary Judgment should be granted because the defense position is unpersuasive. Indeed, particularly with respect to the transfer fee issue, Motiva's Brief essentially proves the Plaintiffs' case.

## A.    THE JURISDICTIONAL ISSUES

The defense's first argument is that the Plaintiffs' claims are either moot or unripe. The defense's arguments are contrary to law, contrary to the undisputed facts and internally inconsistent.

The defense's arguments are based largely upon the fact that the three year franchise agreements upon which this litigation commenced have now expired. What

the defense fails to mention is that the current agreements are virtually identical with

two exceptions, to the original provisions.  The Plaintiffs' Third Amended Complaint

addresses that issue.  Further, while unfortunate, the simple fact is that parties are

unlikely to be able to begin litigation and conclude litigation, including appeals, during

the three year period of a PMPA Franchise.  Were the Court to adopt Motiva's

reasoning, all the defense would need to do in this, and future, cases would be to

extend and delay, by any legal means, a decision on the merits.  The net result is that

the franchisor's activities would continue unabated and unreviewed without a

reasonable opportunity for redress.

## 1.    THE "CAPABLE REPETITION BUT EVADING REVIEW" DOCTRINE

This circumstance is a textbook example of circumstances "capable of repetition,

but evading review."  In those circumstances, Federal Courts have repeatedly and

historically rejected mootness claims and proceeded to address the issues on the

merits.

The doctrine term was coined in Southern Pacific Terminal Co. v I.C.C., 219 U.S.

498, 575 (1911).  In that case, the I.C.C. issued a temporary order, of two years

duration, relating to the use of and charges for wharves in Galveston, Texas.  By the

time the Supreme Court of the United States heard the case, the two year order had

2

expired. Nevertheless, the Court addressed the issues because short term orders would by their very term, defeat review and redress by the Courts, Id.

Possibly the most publicized application of the rule came in Roe v Wade, 410 U.S. 113, 125 (1973) in which the Court exercised jurisdiction over the abortion controversy despite the fact that Ms. Roe had terminated her pregnancy. The basis for the holding was that no reasonable judicial review could be done within the human gestation period.

Less publicized cases refined the rules for "capable repetition, but evading review." Mootness cannot be found where:

      1)     The challenged action was in its duration too short to be fully litigated prior to cessation or expiration; and,

      2)     There is a reasonable expectation that the same complaining party will be subjected to the same action again.

First National Bank of Boston v Belotti, 435 U.S. 776, 774 (1978); Press-Enterprise Co. v Superior Court of Cal., 478 U.S. 1, 6 (1986); Grant v Meyer, 828 F.2d, 1446, 1449 (10th Cir. 1987) (all following Southern Pacific).

3

2.     **THE VOLUNTARY CESSATION DOCTRINE**

The Voluntary Cessation Doctrine was born in <u>U.S. v Trans-Missouri Freight</u> <u>Assoc.</u>, 166 U.S. 290, 308 (1897) in which the Supreme Court upheld jurisdiction in an action against a group of railroad companies which had an agreement to associate with each other for the alleged purpose of fixing railroad rates.  The defense asserted that its voluntary dissolution of the association rendered the Plaintiffs' claim moot.  However, the <u>Trans-Missouri</u> Court held that jurisdiction was not defeated because the Complaint sought not only dissolution of the Association, but an injunction barring similar associations in the future.  The Court specifically noted that if the voluntary dissolution of the Association caused dismissal of the suit, nothing would prevent the Defendants from creating a similar kind of association.  The Court held that the result did not and ought not follow.  <u>Id</u>, at 309.

Later cases refined <u>Trans-Missouri</u>.  In <u>U.S. v W.T. Grant Co.</u>, 345 U.S., 629, 632 (1983), the Supreme Court held that voluntary cessation of allegedly illegal conduct does not render a case moot because the courts do not want to give Defendants the right to a dismissal upon voluntary action where they are free then to return to their old ways, <u>Id</u>.

Later cases have held that dismissal may follow based upon voluntary cessation of activities <u>only</u> where the <u>Defense</u> can show:  1) that there is no reasonable expectation that the violation would not recur; and, 2)  that events have completely and irrevocably eradicated the effects of the alleged violation. <u>Reich v Occupational Safety & Health Rev. Commission</u>, 102 F.3d. 1200 (11th Cir. 1997); <u>Campell v Greisbeiger</u>, 80 F.3d. 703, 706 (2d Cir. 1996).

3.      **APPLICATION TO THE CASE AT BAR**

The Court should exercise jurisdiction because the mootness allegation is contrary to the undisputed facts, contrary to the "Capable of Repetition, but Evading Review Doctrine" and contrary to the "Voluntary Cession Doctrine."

The present  case began in 2000.  It challenged agreements which were proposed in 1999.  The Plaintiffs challenged 7 provisions.  Since that time, new agreements have been entered.  However, 5 provisions namely, the provisions relating to minimum quantities, trial franchises, transfer fees, attorneys' fees and indemnification have remained identical or substantially similar and remain so to this day.  (<u>See, Third Amended Complaint,</u> filed on today's date at, para. b21B).

Despite the lapse of time, only two challenged clauses have seen substantial change, namely the Release Clause and the Limitation of Liability Clause, both of which were deleted by the Defendant shortly after this action was filed.

With respect to the five clauses which continue to carry over to presently effective agreements, no reasonable claim of mootness can be made. Those clauses are real, present and have almost uniformly been enforced. See, Affidavits, attached hereto. The Plaintiffs also requests that the Court take judicial notice of Melo Enterprises LLC v Motiva Enterprises LLC, Docket # 3-02 CV 1737 (AHN) (previously pending in this Court) (in which Motiva asserted and attempted to terminate a Trial Franchise).

With respect to all Seven clauses, the Plaintiffs respectfully submit that the doctrine of "Capable of Repetition, but Evading Review" should apply. In the absence of a Court Order, the Defendant is free to include any or all of the contested provisions in future contracts. Indeed, they have repeatedly inserted Five of the Seven contested provisions in the last three successive agreement, including the most recent and currently controlling agreement. Any of those insertions in a PMPA Franchise would run for a three year term. Complete judicial review is not possible within that time.

6

With respect to the Release and the Limitation of Liability, the Court should also exercise jurisdiction under the "Voluntary Cessation" exception.  There is no dispute that Motiva voluntarily removed these clauses after the action was begun.  There is also no serious dispute that Motiva is free to re-insert the clauses at any time, into any future agreement, absent  judicial intervention.  Therefore, Motiva must satisfy its burden under Reich to demonstrate that there is no reasonable expectation of future violation and complete and irrevocable eradication of effects.  It has made no effort to make such a showing.  It is likely that no attempt was made because Motiva cannot eradicate the effects of those clauses as more particularly set forth below.  Therefore, Motiva's claim should fail.

Lastly, even if deleted in future agreements, the Release Clause and the Limitation of Liability Clause cannot, by their nature, be deemed moot.  A release, by its nature, is (to use vernacular) a "one time deal", it takes effect immediately and dissolves claims from the beginning of the world to the date of the release.  Withdrawing a release term from a future document does not re-constitute the released claims.  It does not "change history."  We will not know the net effect of those releases until all possible Statute of Limitations, on all possible claims, expire.  Effectively, that will never occur.

By way of example, take the case of:  Commissioner of D.E.P. v. Kapadwala,29

Conn. L. Rptr. 210, 2001 WL 204191, Docket  No. CV-990590472-S. (Conn. Super.

Feb. 13, 2001) (attached hereto)  In that case,, the DEP sued Mr. Kapadwala many

years after an alleged release of petroleum products.  The DEP successfully argued

that no Statute of Limitations applies to the Connecticut Agencies for petroleum

contamination.  In that case, the undersigned, on behalf of Kapadwala brought an

indemnification action against his petroleum supplier, Reliable Oil.  If the same set of

facts were presented involving any Motiva Franchisee, the Release Provision might

preclude claims against Motiva.  The release of that contingent liability has a value.

Motiva has shifted the responsibility to protect or insure against it solely on to the

Plaintiffs.  The responsibility is effectively of infinite duration.

The same analysis would apply to the Limitation of Liability.  The only difference

being: the release continues infinitely to the beginning of time, while the Limitation

applies to claims occurring after the effective dates of the agreement.  In both cases,

the future exposure is infinite.

## B.    DECLARATORY JUDGMENT

It is entirely appropriate for the Court to issue a Declaratory Judgment on each of

the issues presented in the Plaintiffs' Motion for Summary Judgment.  The Plaintiffs do

not dispute the legal standard set forth in <u>Dow Jones & Co. v Harrods, Ltd.</u>, 346 F.3d, 357, 360 (2d Cir. 2003).  However, each of the factors cited in that case strongly lean toward the exercise of jurisdiction.

A judgment will fully and finally clarify the rights and responsibilities of the parties. It will eliminate ongoing and substantial disputes.  It will force Motiva to remove flagrantly illegal clauses from the franchise agreements and it will immediately increase the value and marketability of the Plaintiffs' franchises.  There is nothing in the case which suggests "procedural fencing" or friction between Courts.  There is no other adequate remedy.

Motiva's argument is based entirely upon its suggestion of mootness or unripeness, both of which propositions are untenable, especially in light of Motiva's ongoing flagrant violation of law as manifest in nearly identical terms in their franchise agreement and the ongoing enforcement of those terms.  Motiva's suggestion that the Court decline to exercise jurisdiction over declaratory requests should be declined.

**C.    THE SUBSTANTIVE ISSUES**

**1.    THE CUTPA COUNT SUFFICIENTLY ALLEGES DAMAGES:**

The defense  arguments in Section C.1. of its brief, to the effect that the Plaintiffs have not alleged ascertainable loss, is simply wrong.  The Plaintiffs allege damages in

paragraphs 26A, 26B and 28 of the Fifth Count of the Third Amended Complaint.  In

further support, the Plaintiffs submit the Affidavits of Lawrence Ancker, Albert J. Barr

and Michael J. Fox.  Each of which set forth specific examples of Motiva's enforcement

of illegal provisions and the substantial diminishment of value, as well as immediate

cash losses occasioned by Motiva's illegal acts.

Motiva's claim is summarized on Page 11 of the Brief in which it states "nowhere

in the Complaint do Plaintiffs indicate how they have been injured…" (emphasis in

original).  Of course, they cite no authority requiring any Plaintiff to set forth "how" they

were damaged.  That is because no such requirement exists.

That said, each of the disputed clauses has an immediate and obvious monetary

value.  While the amount of that value will undoubtedly be both debated and contested,

a value exists.

The two most obvious examples are the Trial Franchise Provision and the

Transfer Fee Provision.  The Trial Franchise Provision, if valid, would effectively

eliminate any bona fide purchaser who did not already have a Motiva or Equilton

Branded Franchise from acquiring a PMPA Franchise.  A PMPA Franchise, as distinct

from a Trial Franchise, is three years and can only be terminated for good cause as set

forth in the PMPA 15 USC § 2802.  By contrast, a Trial Franchise is only one year in

10

duration and can be non-renewed, at the one year point, for any reason or no reason, 15 U.S.C. § 2803. This elimination of marketability limits and hinders the ability to get credit, the ability to sell and the ability to get full value if the franchise were offered for sale. The Court may take Judicial Notice of Motiva's insistence upon Trial Franchises, Melo Enterprises LLC v Motiva Enterprises LLC, supra.

The transfer fee is a direct monetary payment. Such a payment was required from Plaintiffs, including Ancker Eagle, Inc. and Colonial Eagle, Inc., which remain party Plaintiffs in part, to recover that transfer fee. That monetary payment, even if it were standing alone, would be sufficient to sustain the CUTPA count.

**2.     NON-RENEWAL CLAIM**

Motiva's argument that the Motion should be denied based upon its argument that no termination or non-renewal occurred is largely a re-hash of the Motion to Dismiss. The Plaintiffs hereby incorporate by reference their objection to the Motion to Dismiss.

**3.     THE ATTORNEYS' FEE CLAUSE**

Motiva's Brief cites the State and Federal attorneys' fee Statutes and admits that Motiva, by contract, is attempting to change the effect of those Statutes. Motiva frames

its argument in terms of pre-emption.  This is not a pre-emption issue.  There is a direct conflict between the contracts and the law.  The laws and the contracts are undisputed.

Further, to the extent that Motiva alleges that the contract itself may amend the laws, each Statute contains non-waiver provisions, namely 15 USC § 2805 (f)(i) and Conn. gen. Stat. § 42-1331(j).  To the extent that the contract conflicts with the Statutes it is illegal, unenforceable and invalid.

4.    **THE TRANSFER FEE CLAUSE**

Summary judgment should be granted in favor of the Plaintiffs on the Transfer Fee Clause for the reasons stated in Plaintiffs' Brief and because Motiva's argument is unpersuasive.  First, Motiva simply disagrees with the Plaintiffs' contention that the transfer fee is a restriction on the Plaintiff's undisputed right to sell their franchise rights. Motiva cites no analysis or authority to support its position and it should be rejected.

Motiva concedes that the fee "affects the economics of an assignment." That concession begs the question how much can Motiva take before the "economics" become an unreasonable imposition on the right to transfer.  Ten percent?  Thirty percent?  Ninety percent?

Motiva's argument suggests that it believes it is at liberty to unilaterally "change the economics" of a transaction by charging fees without a relationship to a product,

service, right or burden. In the Plaintiffs' view, a transfer be based on a percentage is unconscionable. Especially where the percentage is based on the dealer's investment of money and effort and where no accounting is made of that money or effort, and where Motiva adds <u>nothing.</u> To illustrate, if a hypothetical dealer purchased a station for $500,000.00, invested an additional $1 million dollars in generating sales, improving appearance and establishing good will at the station, then sold it one year later for $2 million dollars, Motiva would claim a 35% transfer fee or $525,000.00. The total investment by the dealer is $1.5 million dollars. The asset increased in value 500,000.00. Motiva's additional investment is $0. Motiva would obtain $525,000.00 for doing nothing. The dealer would have <u>created</u> $500,000.00 in value, yet sustain a <u>loss</u> of $25,000.00. Is that outcome fair, just or reasonable? We submit not.

Second, Motiva totally eviscerates its own argument with its Brief. Motiva expressly and unambiguously admits that Motiva is charging the Plaintiffs for "<u>The service rendered by Motiva,</u> in this case, <u>none</u>." (Emphasis theirs) <u>Motion papers</u>, at 15.

With this remarkable, telltale, admission, Motiva has essentially proven beyond all doubt, the Plaintiffs' point. Until now, Plaintiffs' had been told, and reasonably believed, that transfer fees, generally, and in Motiva's case particularly, were intended to offset the costs of services performed by Motiva to review transactions, perform credit

13

checks (and the like) and attend to the physical transfer of the franchise.  The Plaintiffs submitted in the original brief that a reasonable and nominal fee could be charged for this service.

Now, Motiva has admitted that it does <u>nothing</u>.  If Motiva does <u>nothing</u>, what is the fee for?  It is now manifest that Motiva is simply taking, <u>by *fiat*</u>, a portion of the franchisee's equity.  Unjust enrichment is easily now established.  Bad faith is easily now established.  Indeed, this admission with additional facts, might lead to fraud allegations.

In short, it is the Plaintiffs' position that Motiva is not entitled to charge for something, or anything, it did not do.  Doing so, as admitted by Motiva, is a violation of <u>Conn. Gen. Stat.</u> § 42-1331, <u>Conn. Gen. Stat.</u> § 42-110b and <u>Conn. Gen. Stat</u>. § 42-133m.

## 5.    THE MINIMUM PURCHASE CLAUSE

The defense attempts to defeat Summary Judgment on this Clause because it asserts there are triable issues of fact.  If the Plaintiffs were challenging the specific numerical quota set for any one dealer rather than the practice of setting quotas, that might be correct.  However, the Plaintiffs submit that any quota under the present contracts is unreasonable.  It matters little how the quotas were derived in Motiva's

mind.  The simple fact is that historical performance, while somewhat indicative of future sales, is hardly conclusive.  This is especially so where Motiva controls rent, cost for product on a station-by-station basis, as well as the costs for many services.  Motiva simply controls too many elements of the franchise.  So much so, that any quota system becomes unreasonable.

### 6.    **MOTIVA IS CLEARLY IN BAD FAITH**

As amply demonstrated by the Transfer Fee, Motiva is doing several things and requiring several clauses in bad faith.  Plaintiffs respectfully submit that because of the flagrancy, repletion and continuation of  Motiva's violation of State and Federal law, Motiva's undisputed acts constitute bad faith as a matter of law.  Among those are:

1.    Insisting upon a release despite a State and Federal law prohibiting any such release;

2.    Charging an unconscionable Transfer Fee for doing nothing;

3.    Establishing sales quotas when Motiva controls the price of product on a dealer-by-dealer basis;

4.    Insisting on a waiver or change of the attorneys' fees balance as set forth in State and Federal law;

15

     5.      Insisting on the Transfer of Trial Franchises in violation of State and Federal law;

     6.      Limiting liability in violation of State and Federal law; and

     7.      Demanding indemnity for its own acts in violation of State law.

In light of the ongoing litigation of these issues across the country and in light of the clear, obvious and flagrant violation of State and Federal law, Motiva is demonstrably in bad faith.

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs' Motion for Summary Judgment should be granted and the Defendants' Motion for Judgment should be denied.

THE PLAINTIFFS,
HORACE BRUCE, ET AL

By _____
John J. Morgan (CT13312)
Barr & LaCava
22 Fifth Street
Stamford, CT 06905
Tel.: (203) 356-1505

17

## **CERTIFICATION**

This is to certify that a copy of foregoing was mailed via U. S. Mail, postage prepaid this _7_ day of __May__, 2005 to the following counsel of record:

Paul D. Sanson, Esq.
Karen T. Staib, Esq.
Alexandra M. McHugh, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919

_____
John J. Morgan

G:\Data\@AJB\MOTIVA\Reply Brief - Horace Bruce.doc

18