Not Reported in A.2d
2001 WL 204191 (Conn.Super.), 29 Conn. L. Rptr. 210
(Cite as: 2001 WL 204191 (Conn.Super.))

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
COMMISSIONER, CONNECTICUT ENVIRONMENTAL PROTECTION AGENCY
v.
Abubaker **KAPADWALA**.
No. CV990590472S.

Feb. 13, 2001.

MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE SPECIAL DEFENSES

RITTENBAND.

*1 On June 22, 1999, the plaintiff, the Commissioner of Environmental Protection, filed a complaint against the defendant, Abubaker **Kapadwala**, on behalf of the state of Connecticut. The plaintiff alleges in its complaint that on March 7, 1994, the defendant directly or indirectly caused pollution and contamination of the land or waters of the state. The plaintiff alleges that the defendant is the owner of Happy House Variety Store (Happy House) located in Stamford, Connecticut. The plaintiff alleges that the defendant violated the law because discharge of heating oil from a pipe connecting the heating oil tank to the furnace in the basement of Happy House caused pollution. The discharge caused an emergency situation whereby the plaintiff has incurred costs and expenses in investigating, containing, removing, monitoring and mitigating the pollution. The plaintiff further asserts that because it incurred costs and expenses in this emergency situation, the defendant is liable pursuant to General Statutes § 22a-451, [FN1] and the plaintiff requests that the court grant it relief pursuant to General Statutes § 22a-5(e) [FN2] § 22a-6 [FN3] and § 22a-451.

FN1. General Statutes § 22a-451(a) provides:
*Any person, firm or corporation which directly or indirectly causes pollution and contamination of any land or waters of the state or directly or indirectly causes an emergency through the maintenance, discharge, spillage, uncontrolled loss, seepage or filtration of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes or which owns any hazardous wastes deemed by the commissioner to be a potential threat to human health or the environment and removed by the commissioner shall be liable for all costs and expenses incurred in investigating, containing, removing, monitoring or mitigating such pollution and contamination, emergency or hazardous waste, and legal expenses and court costs incurred in such recovery,* provided, if such pollution or contamination or emergency was negligently caused, such person, firm or corporation may, at the discretion of the court, be liable for damages equal to one and one-half times the cost and expenses incurred and provided further if such pollution or contamination or emergency was willfully caused, such person, firm or corporation may, at the discretion of the court, be liable for damages equal to two times the cost and expenses incurred. The costs and expenses of investigating, containing, removing, monitoring or mitigating such pollution, contamination, emergency or hazardous waste shall include, but not be limited to, the administrative cost of such action calculated at ten per cent of the actual cost plus the interest on the actual cost at a rate of ten per cent per year thirty days from the date such costs and expenses were sought from the party responsible for such pollution, contamination or emergency. The costs of recovering any legal expenses and court costs shall be calculated at five per cent of the actual costs, plus interest at a rate of ten per cent per year thirty days from the date such costs were sought from the party responsible for such pollution, contamination or emergency. *Upon request of the commissioner, the Attorney General shall bring a civil action to recover all such costs and expenses.*
(Emphasis added.)

FN2. General Statutes § 22a-5 provides in relevant part: "The commissioner shall carry out the environmental policies of the state and shall have all powers necessary and convenient to faithfully discharge this duty. In addition to, and consistent with the environment policy of the state, the commissioner shall ... (e) provide for the prevention and abatement of all water, land and air pollution including, but not limited to, that related to particulates, gases, dust, vapors, noise, radiation, odors, nutrients and cooled or heated liquids, gases and solids ..."

FN3. General Statutes § 22a-6(a) provides

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in relevant part:

The commissioner may: (1) Adopt, amend or repeal, in accordance with the provisions of chapter 54, such environmental standards, criteria and regulations, and such procedural regulations as are necessary and proper to carry out his functions, powers and duties; (2) enter into contracts with any person, firm, corporation or association to do all things necessary or convenient to carry out the functions, powers and duties of the department; (3) initiate and receive complaints as to any actual or suspected violation of any statute, regulation, permit or order administered, adopted or issued by him. *The commissioner shall have the power to* hold hearings, administer oaths, take testimony and subpoena witnesses and evidence, enter orders and *institute legal proceedings including, but not limited to,* suits for injunctions, for the enforcement of any statute, regulation, order or permit administered, adopted or issued by him; (4) in accordance with regulations adopted by him, require, issue, renew, revoke, modify or deny permits, under such conditions as he may prescribe, governing all sources of pollution in Connecticut within his jurisdiction; (5) in accordance with constitutional limitations, enter at all reasonable times, without liability, upon any public or private property, except a private residence, for the purpose of inspection and investigation to ascertain possible violations of any statute, regulation, order or permit administered, adopted or issued by him ... (6) undertake any studies, inquiries, surveys or analyses he may deem relevant, through the personnel of the department or in cooperation with any public or private agency, to accomplish the functions, powers and duties of the commissioner; (7) require the posting of sufficient performance bond or other security to assure compliance with any permit or order; (8) provide by notice printed on any form that any false statement made thereon or pursuant thereto is punishable as a criminal offense under section 53a-157b; (9) construct or repair or contract for the construction or repair of any dam or flood and erosion control system under his control and management, make or contract for the making of any alteration, repair or addition to any other real asset under his control and management, including rented or leased premises, involving an expenditure of five hundred thousand dollars or less, and, with prior approval of the Commissioner of Public Works, make or contract for the making of any alteration, repair or addition to such other real asset under his control and management involving an expenditure of more than five hundred thousand dollars but not more than one million dollars; (10) by regulations adopted in accordance with the provisions of chapter 54 require the payment of a fee sufficient to cover the reasonable cost of the search, duplication and review of records requested under the Freedom of Information Act, as defined in section 1-200, and the reasonable cost of reviewing and acting upon an application for and monitoring compliance with the terms and conditions of any state or federal permit, license, registration, order, certificate or approval ... and (11) by regulations adopted in accordance with the provisions of chapter 54, require the payment of a fee sufficient to cover the reasonable cost of responding to requests for information concerning the status of real estate with regard to compliance with environmental statutes, regulations, permits or orders.

(Emphasis added.)

On March 15, 2000, the defendant filed an answer and revised special defenses. [FN4] The defendant's first special defense alleges that the plaintiff's claims are barred pursuant to one of the following statutes of limitations: General Statutes § 52-577c, [FN5] § 52-577 [FN6] or § 52-584. [FN7] The second special defense alleges that the plaintiff's claims are barred by the doctrine of laches because the plaintiff knew or should have known of the existence of the claim on or about March 7, 1994, the plaintiff's delay exceeded any reasonable time period, and the continuation of the action severely prejudices the defendant.

> FN4. Before filing his revised answer, on February 10, 2000, the defendant filed a complaint against the third party defendant, The Reliable Oil and Heat Company, Inc.
>
> FN5. General Statutes § 52-577c(b) provides: "Notwithstanding the provisions of sections 52-577 and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered."
>
> FN6. General Statutes § 52-577 provides:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

FN7. General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

On March 27, 2000, the plaintiff filed a motion to strike the defendant's first, second and third special defenses with a memorandum of law in support of its motion. [FN8] On May 1, 2000, the defendant filed an objection to the plaintiff's motion to strike with a memorandum in support of the objection. On May 11, 2000, the defendant filed a supplemental memorandum of law. [FN9] On November 15, 2000, the plaintiff filed a reply memorandum, and on November 24, 2000, the plaintiff filed a notice of supplemental authority supporting its motion to strike. Oral argument was held before this Court on November 20, 2000.

FN8. Although the plaintiff has moved to strike the third special defense of promissory estoppel, the defendant in oral argument (Tr. 11/20/00 pages 7-8) virtually conceded to striking this special defense and failed to argue in his brief in support of this special defense. Accordingly, the motion to strike the defendant's third special defense is granted.

FN9. In his May 11, 2000 supplemental memorandum, the defendant argues that the preclusion of a statutes of limitations or a laches defense would violate the equal protection and due process clauses of the United States Constitution and would violate Article 1, § 10 of the Connecticut Constitution. The court has stated that "[l]egislation is presumed to be constitutional, and a litigant challenging its validity has the heavy burden to establish its unconstitutionality beyond a reasonable doubt." *Stafford Higgins Industries, Inc. v. Norwalk*, 245 Conn. 551, 566, 715 A.2d 46 (1998). Here, the court finds that the defendant has failed to prove that the preclusion of said defenses is unconstitutional beyond a reasonable doubt.

STANDARD OF REVIEW

"[A] plaintiff can [move to strike] a special defense ..." *Nowak v. Nowak*, 175 Conn. 112, 116, 394 A.2d 716 (1978); see also *Connecticut National Bank v. Voog*, 233 Conn. 352, 354-55, 659 A.2d 172 (1995); *Girard v. Weiss*, 43 Conn.App. 397, 417, 682 A.2d 1078, cert. denied, 239 Conn. 946 (1996). "In ... ruling on the ... motion to strike, the trial court recognized its obligation to take the facts to be those alleged in the special defenses and to construe the defenses in the manner most favorable to sustaining their legal sufficiency." *Connecticut National Bank v. Douglas*, 221 Conn. 530, 536, 606 A.2d 684 (1992).

FINDINGS
1. FIRST SPECIAL DEFENSE

*2 The plaintiff first moves to strike the defendant's first special defense of the statutes of limitations. Specifically, the plaintiff argues that the statutes of limitations are not applicable here pursuant to General Statutes § 22a-451. The plaintiff asserts that each statute of limitations is a statute of general applicability and that nothing in the statutes the defendant cites indicates either by express terms or necessary implication that the legislature intended the statute to limit the rights of the State. The defendant argues that the statutes of limitations are applicable here because once the state submits itself to the jurisdiction of the court it subjects itself to any proper defense or cross claim related to the subject of the action. Defendant further argues that the statute of limitations defenses are a procedural issue which binds the State and not a substantive issue.

"[S]tatutes of limitations do not generally apply to the state. [A] universal rule in the construction of statutes limiting rights [is] that they are not to be construed to embrace the government or sovereign unless by *express terms* [or necessary implication] such appears to have been the *clear intention of the legislature,* and the rights of the government are not to be impaired by a statute unless its terms are clear and explicit, and admit of no other construction." (Brackets added for emphasis. Italics in original; internal quotation marks omitted.) *Joyell v. Commissioner of Education*, 45 Conn.App. 476, 485, 696 A.2d 1039, cert. denied, 243 Conn. 910, 701 A.2d 330 (1997); see also *State v. Shelton*, 47 Conn.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

400, 405 (1879). Furthermore, when the language of a statute is clear and unambiguous "courts may not by construction supply omissions in a statute merely because the court feels that it has good reasons for doing so and that the statute would thereby be improved ..." (Citation omitted.) *Joyell v. Commissioner of Education, supra,* 45 Conn.App. 486.

"This court has recognized the principle that a subdivision of the state, [FN10] acting within its delegated governmental capacity, is not impliedly bound by the ordinary statute of limitations." *State v. Goldfarb,* 160 Conn. 320, 326, 278 A.2d 818 (1971); see also *Dept. of Transportation v. Canevari,* 37 Conn.Supp. 899, 442 A.2d 1358 (1982) (Appellate Session) (affirming granting of motion to strike special defense of § 52-584 statute of limitations on the ground that a subdivision of the state is not bound by ordinary statute of limitations); *Dept. of Transportation v. Castaldo,* Superior Court, judicial district of New Haven at New Haven, Docket No. 385371 (February 3, 1998) (Zoarski, J.) (21 Conn.L.Rptr. 305, 306) (statute of limitations contained in § 52-584 does not apply to bar state agency from filing action after statutory period for bringing suit has expired); *Commissioner, Dept. of Transportation v. Lehigh, Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 342600 (November 21, 1988) (Allen, J.) (4 C.S.C.R. 34-35) (motion to strike statute of limitations as a special defense granted in an action by the commissioner of transportation to recover costs incurred in removing contamination of subsurface soil and groundwater).

FN10. Or the State itself.

The defendant is correct in arguing that the statute of limitation defenses at issue are procedural in nature. See *Orticelli v. Powers,* 197 Conn. 9, 16, 495 A.2d 1023 (1985) (concluding that General Statutes § 52-577 is procedural rather than substantive, and thus may be waived); *DiBenedetto v. Grenier,* Superior Court, judicial district of Hartford at New Britain, Docket No. 462691 (February 17, 1995) (Handy, J.) (observing that General Statutes § 52-584 is considered personal and procedural and must be pleaded as a special defense). The defendant argues, however, that because they are procedural, the state is bound by them. This Court is not persuaded. In light of the ruling in *Joyell v. Commissioner, supra,* whether the statute of limitations is procedural or substantive is irrelevant in this case. There is nothing in the statutes of limitations cited, either by express terms or necessary implication, that shows a clear intention of the Legislature to have the State be bound by these statutes of limitations. [FN11]

FN11. Case law does not distinguish between procedural and substantive as to the *effect* upon the statutes of limitations. Accordingly, the rules of statutory construction must prevail.

*3 The defendant's argument that it is not fair to in effect exempt the State from the statutes of limitations has merit. However, "[i]f a change should be made, it is for the Legislature, and not the courts, to make." *Leland v. Chawla,* 39 Conn.Supp. 8, 13, 467 A.2d 439 (1983). The defendant's remedy, therefore, is with the Legislature and not with the court.

The plaintiff's claim is not subject to or barred by the statutes of limitations in General Statutes §§ 52-577c, 52-577 or 52-584 and, therefore, the defendant may not raise these statutes of limitations as defenses. Accordingly, the motion to strike the defendant's first special defense is granted.

2. SECOND SPECIAL DEFENSE
The plaintiff further moves to strike the defendant's second special defense of laches, arguing that laches is not available as a defense to actions brought by the state in accordance with laws and regulations. The defendant argues that once the state becomes a party it opens the door to the assertion of any available defenses.

"The defense of laches has application only when there is established unreasonable, inexcusable, and prejudicial delay in bringing suit." *Castonguay v. Plourde,* 46 Conn.App. 251, 265, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997). "The defense is comprised of two elements: (1) a delay that was inexcusable; and (2) a delay that prejudiced the defendant ... The burden is on the party alleging laches to establish the defense." (Citations omitted.) *Id.*

"[*T* ]he doctrine of laches may not be invoked against a governmental agency. " (Emphasis added.) *Joyell v. Commissioner of Education, supra,* 45 Conn.App. 486; see also *Bianco v. Darien,* 157 Conn. 548, 556, 254 A.2d 898 (1969) ("A zoning commission 'is not estopped by laches from enforcing its zoning laws' "); *Wallingford v. Roberts* 145 Conn. 682, 685, 146 A.2d 588 (1958) (when a public body owes a duty to the

public to compel compliance with regulations, that public body is not estopped by laches from enforcing its laws); *Aronson v. Foohey,* 42 Conn.Supp. 348, 355, 620 A.2d 843, 7 Conn. L. Rptr. 534 (1992) (suit by commissioner of income not barred because laches may not be invoked against state agency).

"[Public rights, however,] *may* be lost by an abandonment of them by those interested in their enforcement. Such abandonment may be inferred from circumstances or may be presumed from long continued neglect." *Derby v. Alling,* 40 Conn. 410, 436-37(1873); see also *Appeal of Phillips,* 113 Conn. 40, 46, 154 A. 238 (1931) (*abandonment implies a voluntary and intentional renunciation* ). "[I]t is only by abandonment that [public] rights can be lost through failure to assert them and a delay in doing so is only evidence of such abandonment." *Appeal of Phillips, supra,* 113 Conn. 45 (emphasis added).

However, the defendant has not alleged abandonment.

*4 The defendant may not assert laches against the plaintiff to prevent it from acting in its sovereign capacity to assert public rights because the plaintiff owes a duty to the public (the taxpayers of Connecticut) to compel the defendant to reimburse the state for costs and expenses of containing and removing the pollution and contamination. Accordingly, the plaintiff's motion to strike the defendant's second special defense of laches is granted.

2001 WL 204191 (Conn.Super.), 29 Conn. L. Rptr. 210

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.