UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HORACE BRUCE, ET AL., | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:00 CV 1831 (AWT) |
| | : | |
| v. | : | |
| | : | |
| MOTIVA ENTERPRISES LLC, | : | |
| Defendant. | : | JUNE 10, 2005 |

### MOTIVA'S REPLY TO PLAINTIFFS' OBJECTION
### TO CROSS-MOTION FOR JUDGMENT

**I.   Introduction**

Plaintiffs have made claims in this case for declaratory and injunctive relief under the Declaratory Judgment Act ("DJA") and for damages under the Connecticut Unfair Trade Practices Act ("CUTPA"). The DJA claims challenge the legality of various provisions in the old contract Plaintiffs used to have with Motiva, all of which have since expired, as well as provisions in the new Motiva contract, to which only some of the Plaintiffs are parties. In their CUTPA claim, Plaintiffs allege their franchises have been diminished in value by the inclusion of the allegedly illegal provisions. All of the claims Plaintiffs make in this lawsuit must fail, however, because Plaintiffs have not demonstrated that a case or controversy exists, without which the Court lacks jurisdiction.

Plaintiffs' DJA claims under the old contract must also be denied on the alternate ground that they are moot. Plaintiffs' claims under CUTPA must also be denied because plaintiffs have failed to demonstrate that there is a genuine dispute that they have suffered any ascertainable loss. Motiva is therefore entitled to summary judgment on the following grounds:

   1.   no case or controversy exists for any of Plaintiffs' claims, because Plaintiffs have failed to allege an actual, ripe injury;

2. in addition, the DJA claims relating to the old contract's provisions are moot because that contract is no longer in effect;

3. even if there were a case or controversy under the DJA claims, the Court should exercise its discretion under the DJA against review, because no useful purpose would be served by ruling on Plaintiffs' claims at this time;

4. the Court also lacks jurisdiction under the CUTPA claim, because Plaintiffs cannot show an "ascertainable loss"; and

5. if the Court were to consider the merits of Plaintiffs' claims of illegality, certain of their claims fail to state a violation of the statutes Plaintiffs cite.

In Plaintiffs' Objection to Motiva's Motion for Judgment, Plaintiffs respond by:

1. challenging the claim of unripeness by reiterating conclusory statements that the contract provisions have diminished the value of their franchises;

2. challenging mootness: (1) by asserting that some of the new contract's provisions are virtually identical to the provisions of the old contract; (2) by arguing the "capable of repetition yet evading review" exception applies to the provisions of the old contract; and (3) by arguing that the "voluntary cessation" exception applies to the provisions of the old contract;

3. asserting without evidentiary basis that declaratory judgment for Plaintiffs would be appropriate because it would increase the value of the franchises;

4. claiming their conclusory statements and vague affidavits meet the threshold jurisdictional requirement of showing an "ascertainable loss" under CUTPA;

5. asserting that the transfer fee provisions are illegal as a matter of law; and

6. asserting they have stated a claim that the attorneys' fee provision in the new contract violates the PMPA and the Connecticut Gas Dealers Act.

Despite submission of three affidavits with their Objection, however, the Plaintiffs have still failed to meet their burden under F.R.C.P. 56 to designate "specific facts showing there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). On the contrary, the affidavits underscore that the Plaintiffs cannot show that they have suffered any actual injury under the old or new contract. The burden on Motiva, the party moving for summary judgment, "may be discharged by 'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support the nonmoving party's case." Id., 477 U.S. at 325, 106 S. Ct. at 2554. With respect to the mootness issues relating to the old contract, Plaintiffs have also failed to meet their burden of showing that any of the exceptions to mootness apply.

## II. Argument

### A. Plaintiffs have not demonstrated a case or controversy exists as to any of their claims, because they cannot show an actual, ripe injury exists.

Plaintiffs continue to be unable to show that an actual controversy exists: that they "personally ha[ve] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Tasini v. New York Times Co., Inc., 184 F. Supp. 2d 350, 355 (S.D.N.Y. 2002) (citing Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S. Ct. 1601 (1979). To present an actual controversy for jurisdictional purposes, a claim must be ripe; that is, there is either an actual injury or the threatened injury must be sufficiently likely to occur or to present a direct and immediate impact, as opposed to being merely possible sometime in the future. Dow Jones & Co. v. Harrods, 237 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2002). Despite having the burden to produce evidence to rebut Motiva's Motion for Judgment, Plaintiffs still have not demonstrated, because they cannot, that the contract provisions have caused them any actual, ripe injury.

Plaintiffs do have an affirmative burden of presenting evidence at the summary judgment stage: "In response to summary judgment, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). In their Objection, Plaintiffs assert that the affidavits by Mr. Fox (a lobbyist/consultant for gasoline

dealers), Attorney Barr (one of Plaintiffs' attorneys) and Mr. Ancker (a dealer who sold two of his Motiva franchises) "set forth specific examples of Motiva's enforcement of illegal provisions and the substantial diminishment of value, as well as immediate cash losses occasioned by Motiva's illegal acts." Plaintiffs' Objection ("Pl. Obj.") at 10. Yet the only allegation in any affidavit that pertains to facts at issue in this case is the assertion that Ancker paid transfer fees on two of his franchise locations. And even Ancker's affidavit fails to provide the necessary "specific evidence" such as dates or amounts paid. Other than this one assertion by Ancker, the affidavits only allege Motiva's conduct as to third parties unrelated to this suit.[1] As such, they fail to support Plaintiffs' burden to produce evidence to meet Motiva's challenge on motion for judgment that Plaintiffs have not alleged any actual injury to themselves. See Celotex, 477 U.S. at 327, 106 S. Ct. at 2554-55 (remanding the case to the Court of Appeals to address the adequacy of nonmovant's evidentiary showing in response to motion for summary judgment and whether that showing, when reduced to admissible evidence, would suffice).

Although Plaintiffs allege that "Motiva …has enforced the contractual provisions against the plaintiffs…as a result, the plaintiffs sustained money damages and a diminishment of the value of their franchises,"[2] allegations are not enough to defeat a summary judgment motion. There are more than twenty Plaintiffs named in this case, yet only Ancker has submitted an affidavit, and his fails to provide sufficient specific facts. Further, instead of submitting competent, material evidence that money damages were sustained or the franchises were actually diminished in value. Plaintiffs ask the Court to take judicial notice of a completely unrelated

---

[1] Ancker's statement that he "has been involved in sales or proposed sales in which Motiva has insisted upon a trial franchise to the transferee" is immaterial. Ancker Affidavit. Ancker has not alleged that either of his franchises lost any money because they could only be sold to a trial franchisee.

[2] Plaintiffs' proposed Third Amended Complaint, dated May 2, 2005, at ¶¶ 26A-26B.

case[3] as the basis for finding harm to the Plaintiffs in this case. Pl. Obj. at 6. Irrelevant, immaterial facts cannot support a challenge to summary judgment:

> Before rendering summary judgment, a court must also determine that any unresolved issues are not material to the outcome of the litigation. "The mere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment." <u>Quarles v. General Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam). Nor may a party rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. <u>Id.</u>

<u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11-12 (2d. Cir. 1986).

Plaintiffs also fail to present evidentiary support for their assertion that: "This elimination of marketability [of the franchise because of the contested provisions] limits and hinders the ability to get credit, the ability to sell and the ability to get full value if the franchise were offered for sale." Pl. Obj. at 11. Tellingly, none of the Plaintiffs in this case have provided any specific instance where they suffered an injury because they were unable to sell a franchise, secure credit, or get full value for a franchise sale.

In sum, even though this lawsuit has been pending for more than four years, Plaintiffs have been unable to provide any specific, material evidence that they have suffered any actual or threatened injury as a result of these contracts. As a result, Plaintiffs have failed to meet their burden of showing any genuine dispute of a material fact, and summary judgment is appropriate.

> **B.  In addition, Plaintiffs' DJA claims relating to the old contract's provisions are moot, because that contract is no longer in effect.**

As noted above in Section II.A., the Court should grant judgment for Motiva on all of Plaintiffs' claims because no actual injury ripe for adjudication has occurred. An additional basis for ruling against Plaintiffs on the DJA claims based on their old contracts is that those claims are mooted by the expiration of the old contracts. As Plaintiffs now concede, the new

---

[3] Melo was never a plaintiff in this action.

agreements are the "operative" documents. See, proposed Third Amended Complaint, ¶ 13B. Nonetheless, Plaintiffs argue, but fail to demonstrate, that the facts in this case bring their DJA claims concerning the old contracts into one of two exceptions to mootness.

### 1. The "capable of repetition, yet evading review" exception does not apply to the old contract's provisions.

Plaintiffs attempt to avoid the fact that the old contract provisions are no longer effective by looking to the "capable of repetition, yet evading review" exception to mootness. However, they fail to satisfy either of the two requisite prongs:

> (1) the challenged action was in its duration too short to be fully litigated prior to its secession or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

Kaminski v. Judicial Review Council, C.A. No. 2:91-127, 1993 U.S. Dist. LEXIS 21095 (D. Conn. 1993).

Plaintiffs claim a three-year contract period is too short a time for a case such as this to be litigated, but the "too short duration" prong is designed for cases, like Roe v. Wade, where there is inherently insufficient time to litigate a conflict before it will become moot. See Pl. Obj. at 6; Roe v. Wade, 410 U.S. 113, 125, 93 S. Ct. 705 (1973) ("the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation will seldom survive much beyond the trial stage."); see also, Fox v. Bd. of Trustees of the State University of New York, 42 F. 3d 135, 143-44 (2d Cir. 1994) (where claims were mooted upon plaintiffs' graduation from defendant university, this exception to mootness did not apply because (1) four years is enough time to adjudicate a First Amendment claim, even if that particular case ran longer because of appeals, and (2) plaintiffs' claims they might re-enroll as graduate students were speculative).

Plaintiffs also fail the second prong of this exception, to show a "reasonable expectation"

or "demonstrated probability" that these same Plaintiffs will be injured by the same contract provisions in the future. Van Wie v. Pataki, 267 F. 3d 109, 114-15 (2d Cir. 2001) (finding equal protection claims moot where the election in question had passed and appellants did not adequately demonstrate they would seek to vote in another election). Plaintiffs put forward no evidence at all from which the Court could determine that it is a "demonstrated probability" or "reasonably likely" that Motiva and any of these Plaintiffs would ever contract for the old provisions again. Morever, Plaintiffs' argument that Motiva has and can reinsert the old provisions—since the new provisions are "virtually identical" to the old provisions—must fail, because the new agreements' provisions are considerably different from the old ones. See Exhibit 4 to Plaintiffs' MSJ (summarizing proposed changes to the old contracts, which changes became the new provisions); see also Kuschman Affidavit at ¶¶ 12, 14 and 16 (attached to Motiva's Motion for Judgment).

  **2. The "voluntary cessation" exception does not apply to the old contract's provisions.**

The "voluntary cessation" exception to mootness does not apply to the facts here, because "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." United States v. Beacon Aerospace Corp., No. 3:99-MC-146, 2000 U.S. Dist. LEXIS 969 at *12 (D. Conn. 2000) (citing County of L.A. v. Davis, 440 U.S. 625, 631, 99 S. Ct. 1379 (1979)). In Beacon Aerospace, the Court did not apply the "voluntary cessation" exception where the defendant, BAC, surrendered its FAA certificate to do airplane repair work to avoid a subpoena by the FAA concerning alleged illegal repairs on the day the subpoena was served:

> This interim event – BAC's Surrender of its Air Agency Certificate – completely eradicates the need to resolve the issues presented . . . because, absent FAA certificate, BAC is not free to resume operating as a certificated repair station . . . If BAC ever wishes to become recertified in the future, the FAA may at that time condition its approval on BAC's compliance with the terms of the subpoena.

Id. at **3, 13.

The Second Circuit also declined to apply the "voluntary cessation" exception where a bar applicant with a history of mental illness sought declaratory and injunctive relief against the New York Appellate Division, claiming a bar application question violated the Americans with Disabilities Act. Campbell v. Greisberger et al., 80 F. 3d 703, 704 (2d Cir. 1996). The Appellate Division removed the question from the application voluntarily before the suit was actually filed, making the claim moot, but plaintiff argued that the Appellate Division was free to put the question back into the application at any time. Giving "some deference" to Appellate Division's "permanent" removal of the question from the application, the Court upheld the dismissal for mootness, finding "there is no reason to believe the Appellate Division will reinstate question 18(c)." Id. at 706. Moreover, "there is nothing to indicate that it [removed question 18(c)] merely to avoid judicial scrutiny." Id.

The termination or expiration of the old contract completely and irrevocably eradicates the effect of the old provisions where, as here, no actual injuries were alleged to have occurred under the old provisions.[4] Nor have Plaintiffs suggested any basis to believe that the mooting event—expiration or termination of the old agreements—was done for the purpose of evading judicial review. Rather, the termination of the old provisions and the offering of the new provisions demonstrate that there is no reasonable basis to conclude that Motiva is likely

---

[4] Plaintiffs argue that the release provision in the old contract still binds all of the Plaintiffs. But this claim, like the others, is at best theoretical because Plaintiffs do not allege and offer no evidence that they have suffered an actual harm as a result of this release. Pl. Obj. at 7. Plaintiffs' argument therefore calls for an advisory opinion. The same argument applies for the limitation of liability provision.

to return to using the old provisions.

### C. Even if there were a case or controversy under the DJA claims, the Court should exercise its discretion under the DJA against review, because no useful purpose would be served by ruling on Plaintiffs' claims at this time.

In general, plaintiffs do not have any right to a remedy under the Declaratory Judgment Act, even if the court otherwise has jurisdiction. Wilton v. Seven Falls Co., 515 U.S. 277, 282, 289-90, 115 S. Ct. 2137 (1995). Rather, the District Court has "unique and substantive discretion" as to whether to even entertain a declaratory judgment claim. Id. Even if the Court were to find it has jurisdiction in this case, it should nonetheless decline to entertain the DJA claims, because no useful purpose would be served, no controversy would be finalized. Dow Jones & Co. v. Harrods, 346 F.3d 357, 360 (2d Cir. 2003).

Plaintiffs argue that declaratory judgment in their favor would result in the elimination of ongoing and substantial disputes. Pl. Obj. at 8-9. In support of this assertion, and with no evidence in the record to substantiate their claim, Plaintiffs urge the Court that "forc[ing] Motiva to remove flagrantly illegal clauses from the franchise agreements. . .will immediately increase the value and marketability of the Plaintiffs' franchises." Id. at 9.[5] Without any evidence or specific allegations of actual diminution of value of the franchises offered, this statement cannot support Plaintiffs' claim that declaratory judgment would be appropriate here.

### D. Plaintiffs cannot meet the threshold requirement of demonstrating an ascertainable loss under CUTPA, therefore the Court lacks jurisdiction on that claim.

"In order to state a cause of action under the CUTPA, a plaintiff must demonstrate that she has 'suffered any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b.'" Maguire v. Citicorp Retail Services, 147 F.3d 232, 238 (2d Cir. 1998) (citing Conn. Gen. Stat. §42-110g(a)).

---

[5] Obviously Motiva believes its contract provisions are not "flagrantly illegal" or illegal at all.

"Although plaintiffs are not required to prove a specific amount of actual damages to make out a prima facie case under the CUTPA, the ascertainable loss requirement is a 'threshold barrier' that must be satisfied in order to state a CUTPA claim." Id. (citing Hinchcliffe v. American Motors Corp., 184 Conn. 607, 400 A.2d 810 (Conn. 1981)). In Maguire, the plaintiff was a debtor who alleged her credit card company had sent her a collection letter under false pretenses in violation of the Fair Debt Collection Act and CUTPA. Vacating the district court's summary judgment for defendant on the Fair Debt claim, the Court nonetheless affirmed its summary judgment for defendant on the CUTPA claim:

> Plaintiff, the party claiming damages, has the burden of proving damages or "ascertainable loss"…Maguire's complaint does not allege any injury or loss that resulted from receipt of the Debtor Assistance letter. There is no evidence in the record that Maguire paid the debt, acted in reliance on the letter, suffered emotional loss or harm, or responded to the letter in any way.

Id., at 238 (internal citation omitted). See also Reader v. Cassarino, 51 Conn. App. 292, 300, 721 A.2d 911, 915 (Conn. App. 1998) (affirming trial court's judgment that no CUTPA claim had been stated where plaintiff failed to present evidence that she was actually harmed by her landlord's concededly illegal entry and detainer); and see Devan Motors of Fairfield v. Infiniti Div. of Nissan North America, Inc., No. 3:04 CV 00308, 2004 U.S. Dist. LEXIS 25160 at ** 4-5 (D. Conn. 2004) (denying motion to dismiss CUTPA claim; where plaintiff alleged it bought a car dealership on defendants' representation that the dealership would be for an exclusive territory, there was evidence that the non-exclusive dealership with intrabrand competition would generate 22% less sales volume, the Court could reasonably infer that the Plaintiff had suffered an ascertainable loss.)

In contrast to the plaintiff in Devan, the Plaintiffs in this case have not put forward any evidence or even specific allegations upon which the Court could reasonably infer that Plaintiffs

have suffered any ascertainable loss, through diminution in value of the franchises or otherwise. See discussion on lack of actual injury, above, in Section II.A. The Plaintiffs cannot state a valid CUTPA claim because they have failed to demonstrate an injury constituting an "ascertainable loss" as a matter of law. The affidavit submitted by Ancker also is inadequate to demonstrate any actual injury with respect to the two Plaintiff stations he sold.[6] Although Ancker states that he paid a transfer fee, he provides no specifics as to what amounts were paid or whether these amounts were unreasonable in relation to industry standards or to Motiva's actual costs.

> **E. To the extent the Court were to consider the merits of Plaintiffs' claims of illegality, certain of their claims fail to state a violation of the statutes Plaintiffs cite.**
>
> > **1. Plaintiffs fail to state a claim that the attorneys' fee provision in the new agreement violates the PMPA or the Connecticut Gasoline Dealers Act.**

The Petroleum Marketing Practices Act and Connecticut Gasoline Dealers Act both provide for attorneys' fees for prevailing franchisees, but do not provide for attorneys' fees for prevailing franchisors (except in the case of frivolous actions). It does not follow, however, as Plaintiffs argue that "[t]here is a direct conflict between the contracts and the law." Pl. Obj. at 12. Nothing in these statutes specifically or impliedly prohibits or limits the parties' right to contract for additional terms not in conflict with the statutory prescriptions. Nor have Plaintiffs presented any case law interpreting these statutes to imply such a bar.

> > **2. Plaintiffs have not addressed Motiva's claim that, as a matter of law, the transfer fee violates neither Conn. Gen. Stat. § 42-133m nor §42-133*l*(f)(7).**

Plaintiffs have based their transfer fee argument on two statutes, one on prohibiting of assignment and one on the prices franchisors can charge franchisees for goods or services. Pl. Obj. at 12-14. Neither of these statutes applies to the facts in this case.

---

[6] Colonial Ancker, Inc. and Ancker Eagle, Inc.

Connecticut General Statutes § 42-133m forbids the franchisor to "prohibit assignment" or unreasonably withhold its consent to an assignment. Charging a transfer fee does neither, and, indeed, no Plaintiffs have alleged that any attempted sale of a franchise was hindered in any way by the transfer fee provision. Mr. Ancker's two franchises are the only Plaintiffs to even allege they have attempted a sale or have paid a transfer fee. Ancker Affidavit.

Plaintiffs also rely on Connecticut General Statutes § 42-133*l*(f)(7), which prohibits a franchisor from selling, renting or offering for sale any product or service to a franchisee at an unfair, unreasonable price. Pl. Obj. at 14-15. The plain language of § 42-133*l*(f)(7) indicates it applies to the <u>sale</u> of a <u>service</u>. Despite some distracting argument, Plaintiffs have not shown how or why a transfer fee, clearly labeled a "fee," should be viewed as a purchase price for a service at all. Moreover, Plaintiffs have themselves already argued that the transfer fee does not involve a service.[7] Plaintiffs' MSJ at 16. Plaintiffs are trying to pound the square peg of the transfer fee into the round hole of the statute, but they cannot credibly maintain that the transfer fee comes within the ambit of § 42-133*l*(f)(7). Moreover, Plaintiffs have not stated any facts alleging that any specific fee charged was "unreasonable."[8]

### III. Conclusion

For all of the reasons set forth in this Reply and in Motiva's Motion for Judgment, the Court should grant Motiva's Motion for Judgment against Plaintiffs on all claims.

---

[7] Plaintiffs disingenuously accuse Motiva of having admitted in its Motion for Judgment that Motiva incurs no cost or expense when a franchise is transferred. <u>See</u> Pl. Obj. at 13-14 (attributing Plaintiffs' language as quoted by Motiva to Motiva itself).

[8] Motiva does not address here the two final sections of Plaintiffs' Objection (minimum quantities and bad faith) under L.Civ.R. 7(d) as they are not actually part of Plaintiffs' Objection, but are addressed in reply to Motiva's opposition to Plaintiffs' MSJ. <u>See</u> Motiva's Memorandum of Law, dated February 14, 2005 at 15-17.

THE DEFENDANT,
MOTIVA ENTERPRISES LLC,


By /s/ Alexandra M. McHugh
Paul D. Sanson
Fed. Bar No. ct05477
Alexandra M. McHugh
Fed. Bar No. ct22428
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5000
Facsimile: (860) 251-5219
E-mail: psanson@goodwin.com
E-mail: amchugh@goodwin.com
Its Attorneys


**CERTIFICATION OF SERVICE**

This is to certify that on this 10th day of June, 2005, a copy of the foregoing Motiva's Reply to Plaintiffs' Objection to Cross-Motion for Judgment was sent by facsimile and U.S. mail, postage prepaid, to:

John J. Morgan, Esq.
Barr & LaCava
22 Fifth Street
Stamford, CT 06905


/s/ Alexandra M. McHugh
Alexandra M. McHugh

405114 v.01