

United States District Court
District of Connecticut
FILED AT HARTFORD
10-7-05
Kevin F. Rowe, Clerk
By
Deputy Clerk

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HORACE BRUCE, MARK PETRINO,
ROSEMARIE LICARE, ANTHONY ZACCOGNINO,     Civil Action # 300 CV 1831AWT
WILLIAM DELIZIO, JOHN MOUCO,
ATTILIO SCHIAVONE, RICHARD FICORILLI,
ROBERT ALEKSANDROWICZ, CHRISTINE
ALEKSANDROWICZ, WILLIAM BURKMAN,
DAVID FODOR, GARY CERASO, RAM ENTERPRISES, INC.
BGS, INC., DEMING STREET, INC., SOUTHPORT GAS &
CONVENIENCE, INC., C.C. MASE, INC.,
SHIVUM, INC., GREENWICH
AUTOMOTIVE SERVICES, INC., RED EAGLE, INC.,
COLONIAL EAGLE, INC., SEBASTIAN GANGEMI
ANCKER EAGLE, INC., QLS CORP., DANBURY
TEXACO, INC., WEST PUTNAM SHELL, INC.,
MTJ PETROLEUM, INC., SEYMOUR SHELL AND
TIRE CENTER, INC., FLK ENTERPRISES, LLC,
ALL PRO TIRE, INC.,PANCOAST AND SMALL, INC.,
ELMWOOD FOODMART, INC., USAMA PETROLEUM, INC.,
HUKAN-DIN, INC, AND CHOUDURY PETROLEUM, INC.

    vs.

MOTIVA ENTERPRISES, LLC          MAY 2, 2005

### THIRD AMENDED COMPLAINT

1.    The Plaintiffs HORACE BRUCE, MARK PETRINO, ROSEMARIE LICARE,

ANTHONY ZACCOGNINO, WILLIAM DELIZIO, JOHN MOUCO, ATTILIO SCHIAVONE,

RICHARD FICORILLI, ROBERT ALEKSANDROWICZ, CHRISTINE LEKSANDROWICZ,

3

WILLIAM BURKMAN, DAVID FODOR,  SEBASTIAN GANGEMI AND GARY CERASO, are each individuals who operate Shell Branded or Texaco Branded Service Station Franchises within the State of Connecticut.

     1A.    Each of the plaintiffs are residents of the State of Connecticut or the State of New York, and in any event not the States of Delaware or Texas.

     2.    The Plaintiffs RAM ENTERPRISES, INC., BGS, INC., DEMING STREET, INC., C.C. MASE, INC., SHIVUM, INC., GREENWICH AUTOMOTIVE SERVICES, INC., RED EAGLE, INC., COLONIAL EAGLE, INC., ANCKER EAGLE, INC., QLS CORP., DANBURY TEXACO, INC., WEST PUTNAM SHELL, INC., MTJ PETROLEUM, INC., SEYMOUR SHELL AND TIRE CENTER, INC., FLK ENTERPRISES, LLC, ALL PRO TIRE, INC., PANCOAST AND SMALL, INC. ELMWOOD FOODMART, INC., USAMA PETROLEUM, INC., SOUTHPORT GAS & CONVENIENCE, INC., HUKAN-DIN, INC, AND CHOUDURY PETROLEUM, INC. are each corporations which operate Shell Branded or Texaco Branded Service Station within the State of Connecticut.

     2A.    Each of the Plaintiff Corporations are organized under the laws of Connecticut and maintain their principal place of business in Connecticut and, in any event, not in the States of Delaware or Texas.

3.      The Defendant is Motiva Enterprises, LLC, which is a Delaware Limited Liability Company with a principal place of business in the State of Texas, which rents service station properties and supplies petroleum products to one or more of the Plaintiffs, within the State of Connecticut.

## II.     JURISDICTIONAL BASIS

4.      The jurisdiction is founded upon 28 U.S.C. §1331 in that the Plaintiff's allegations raise issues pursuant to 15 U.S.C. §2801 et. seq. the Petroleum Marketing Practices Act (hereinafter PMPA).

4A.     Jurisdiction is further founded upon 28 USC § 1332 in that there is diversity of citizenship and the judgment sought involves well over $75,000.00.

5.      Any additional claims pursuant to Connecticut common law or Connecticut statutory law are properly before this Court pursuant to 28 U.S.C. §1367, Supplemental Jurisdiction.

6.      Jurisdiction in this matter is further granted by 28 U.S.C. §2201 in that the Plaintiffs seek declaratory relief in addition to other relief.

## III. FACTS

7.      By letter dated December 9, 1999, each of the Plaintiffs was provided a Retail Facility Lease and Retail Sales Agreement as well as certain ancillary documents which purported to be renewal agreements for the Plaintiffs franchise relationship.

8.      Each of those agreements indicated that the Plaintiffs were required to take certain actions within twenty-five days of the date of the letter.  However, the letter was not delivered until on or about December 21, 1999.

9.      Each of those franchise agreements was presented to the Plaintiffs on an "as is, take it or leave it" basis.

10.      Motiva Enterprises, LLC did not, and refused to, negotiate certain modifications to the documents including those portions set forth herein.

11.      Each of the Plaintiffs executed and returned the documents with a cover letter of protest or otherwise attempted to do so.

12.      Motiva Enterprises, LLC refused to accept the letters of protest and insisted that the documents be executed notwithstanding the Plaintiffs' claims that portions of the document violated state and federal law.

13.      The retail sales agreement provides, in part, as follows:

"Seller shall sell and deliver to retailer and retailer shall purchase and accept from Seller the minimum quantities of products during each calendar month as

identified in part I ("Minimum Quantities") Seller may, but is not obligated to, sell Retailer more than the Minimum Quantities. Seller may adjust the Minimum Quantities pursuant to any applicable Federal or state mandatory or voluntary allocation program or in accordance with Article 19. If Retailer fails to purchase the Minimum Quantities, Seller may take such action as Seller deems appropriate including, without limitation, exercising Seller's right to terminate or non-renew this Agreement under Article 23."

13A.    On or about June 18, 2001, the defendants gave notice to the plaintiffs that the Retail Sales Agreement might be amended in the future to provide:

"Seller shall sell and deliver to retailer and retailer shall purchase and accept from Seller the minimum quantities of products during each calendar month as identified in part I ("Minimum Quantities") Seller may, but is not obligated to, sell Retailer more than the Minimum Quantities. Seller may adjust the Minimum Quantities pursuant to any applicable Federal or state mandatory or voluntary allocation program or in accordance with Article 19. If Retailer fails to purchase the Minimum Quantities, **Seller may in its sole discretion**, take such action as Seller deems appropriate including, without limitation, **(1) adjusting the Minimum Quantities if the failure was due to changed circumstances; or, (2)** exercising Seller's right to terminate or non-renew this Agreement under Article 23 **unless such failure was due to a reason beyond retailers reasonable control.**" (emphasis added to changes).

13B.    On or about October 24, 2002, Motiva again amended the Lease and Retail Sales

Agreement which is now the operative agreement. (Hereinafter "2002 Agreement").

14.    The retail sales agreement further provides, in pertinent part, as follows:

"<u>Trial Franchise</u>. Except to the extent limited by applicable Law, if the Retailer desires to Transfer its interest in this Agreement to an individual or Business Entity that has not previously operated as a retailer of Seller's Products or of Seller's affiliates, then Retailer may be required to execute a mutual termination of this agreement and the proposed transferee may be required to execute a trial franchise agreement as a condition to Seller granting its consent to the Transfer."

15.    The retail sales agreement further provides as follows:

"<u>Transfer Events</u>.  Without limiting the foregoing, the following events constitute

a Transfer:

(1)    Subject to Article 25, Retailer dies and Retailer's interest in this
Agreement is transferred, whether by will or operation of Law;

(2)    Retailer becomes bankrupt or insolvent, Retailer makes an assignment for
the benefit of creditors, or a proceeding is instituted under the Bankruptcy Code,
and, if it is an involuntary proceeding, and Retailer or other affected party has not
had it dismissed within sixty days;

(3)    A writ of attachment or execution is levied on this Agreement and is not
removed by Retailer within thirty days;

(4)    A receiver is appointed with authority to take possession of the Retailer's
Station and is not removed within 60 days in any proceeding or Action to which
Retailer is a party;

(5)    If Retailer is a limited liability partnership or partnership, a withdrawal or
any change of interest (voluntary, involuntary or by operation of Law) or of any
partner or the dissolution of the partnership;

(6)    If Retailer is a limited liability company or corporation, any dissolution,
merger, consolidation or other reorganization or other arrangement having similar
effect, or the Transfer by Retailer or any member or shareholder of 10% of the
voting shares of the capital stock of retailer or of any lesser interest with
cumulatively vests 10% or more of such voting shares in the transferee; and

(7)    If Retailer is composed of more than one person, any change of interest
(voluntary, involuntary or by operation of Law) of any such person."

16.    The retail sales agreement further provides as follows:

Release.  The parties release each other, their respective members, subsidiaries,
affiliates and joint venture partners, and their respective directors, officers,

8

employees, and agents as of the effective date of this agreement and to the extent permitted by law, from all claims which each party may have against the other (whether or not now known) arising directly or indirectly out of or in connection with any prior agreement, excepting, however, claims of Seller against Retailer for indebtedness, reimbursement, or indemnification. Retailer understands that this release waives any limitation with regard to a general release that may exist under applicable law and that even if Retailer or Seller should later become aware of a claim arising out of events or circumstances not now known or suspected to exist, retailer or seller, as the case may be will not be able to assert such claim against the other.

17.    The retail facility lease provides as follows:

"Trial Franchise. Except to the extent limited by applicable law, if the Lessee decides to Transfer its interest in this Lease to an individual or Business Entity that has not previously operated as a retailer of petroleum products of Lessor or Lessor's affiliates, then Lessee may be required to execute a mutual termination of this Lease and the proposed transferee may be required to execute a trial franchise agreement as a condition to Lessor granting its consent to the transfer."

18.    The retail facility lease further provides as follows:

"Transfer Fee. (1)     Except for lessees in New Hampshire or Virginia which will be governed by applicable state Law, to the maximum extent permitted by Law, Lessee shall pay to Lessor a franchise transfer fee ("Transfer Fee") in the form of a bank cashier's check prior to or at the closing of any Transfer. With the exception of a Transfer in the event of Lessee's death, long term disability, or sickness (6 months or more) that prevents Lessee from operating the business at the premises, the Transfer Fee is applicable to all Transfers, including a Transfer to the Lessor. If the Lessee Transfers any stock, the Transfer Fee will be prorated based upon the number of shares transferred.
(2)     For purposes of calculating the Transfer Fee as set forth below, the "Gross Sales Price" is the value of any consideration received excluding the value of inventory and equipment. At the time of closing, the transferee and Lessee shall execute an Affidavit of Consideration certifying the Gross Sales Price and

assigning values to the equipment and inventory based on the last invoice from Lessor for the motor fuel and retail cost for other inventory. If Lessor, in the exercise of reasonable judgment, disagrees with the equipment values, Lessor may require that the transferee obtain an appraisal of equipment. Lessor shall provide the transferee with the names of 3 Member Appraisal Institute (M.A.I) appraisers. If the appraised value on the equipment is greater than or equal to the assigned value by the transferee, Lessor shall pay for the appraisal, if the appraised value of the equipment is less than the assigned value, the transferee shall pay for the appraisal. The appraisal will be conclusive for establishing the value of the equipment.

3. With the exception of a Transfer by Lessee's Designee as defined in the RSA, the amount of the Transfer Fee will be the greater of $6,500 or the amount arrived at by multiplying the difference between the base line Gross Sales Price (the price Lessee paid for the business originally) and the Gross Sales Price for the current Transfer by the applicable percentage below (which is based upon the year Lessee makes the Transfer).

> (i)   Less Than 3 Years at 35%
> (ii)  3 years to less than 6 years at 20%.
> (iii) 6 years to less than 9 years at 15%
> (iv)  9 years or more at 0%

For any Transfer by Lessee's Designee, the Transfer Fee will be $6,500."

19.    The Retail Facility further provides as follows:

"Release: The Parties release each other, their respective members, subsidiaries, affiliates and joint venture partners, and their respective directors, officers, employees, and agents as of the effective date of this lease and to the extent permitted by law, from all claims which party may have against the other (whether or not now known), arising directly or indirectly out of or in connection with any prior lease, excepting, however, claims of Lessor against Lessee for indebtedness, reimbursement, or indemnification. Lessee understands that this release waives any limitation with regard to a general release that may exist under applicable law and that even if Lessee or Lessor should later become aware of a claim arising out of events or circumstances not now known or suspected to exist,

Lessee or Lessor, as the case may be will not be able to assert such claim against the other."

20.    The Retail Facility Lease further provides in pertinent part, as follows:

"MAINTENANCE.  As of the Effective Date of this Lease, Lessee acknowledges that the Premises are in good condition and repair."

21.    Both the Retail Facility Lease and the Retail Sales Agreement in substance provide the following, in pertinent part:

ATTORNEYS FEES.  Seller will be entitled to recover from Retailer reasonable attorney's fees and other legal costs Seller incurs in order to secure or protect the rights inuring to Seller under this Agreement, or to enforce the terms thereof.

21A.  On or about June 18, 2001, the defendants advised the plaintiffs that the Retail Facility Lease and the Retail Sales Agreement might be amended to provide, in substance, as follows:

ATTORNEYS FEES.  **The Prevailing Party** will be entitled to recover from **the other party** reasonable attorney's fees and other legal costs **the party** incurs in order to secure or protect the rights inuring to **the prevailing party** under this Agreement, or to enforce the terms thereof. (emphasis added to changes).

21B.  The Attorneys fee provision, the trial franchise provision, the transfer fee provision, the minimum purchase provision, the maintenance provisionand the Indemnification provison set

forth in paragraph 23, below are not substantially changed, for purposes of this action from the

June 18, 2001 notice to the 2002 Agreement.


22.    The Retail Sales Agreement further provides the following:

LIMITATION OF LIABILITY.  Retailers sole and exclusive remedy for any
claim arising from or in connection with an alleged failure of or defect in any Products
sold by Seller to Retailer (whether the claim is for breach of contract or warranty or is
under tort, strict liability, statute or otherwise) will be (a) at Seller's option, replacement
of the failed, defective, or non-conforming Products or reimbursement of the purchase
price thereof and (b) reimbursement of the reasonable cost of repair or replacement of
any mechanical equipment or parts that are damaged directly by the use of such Products.
In no event will either party be liable to the other for any indirect, special, incidental,
consequential or punitive damages arising under this Agreement whether under tort,
contract, strict liability, warranty, statute, or otherwise.

23.    Both the Retail Sales Agreement and the Retail Facility Lease, contain

indemnification provisions which require the retailer to indemnify the franchisor for "any claim

for harm, injury, or death to any person, or damage to property or to the environment arising out

of or in connection with any of the following matters:

(1)    Retailer's performance or non-performance under this agreement;
(2)    Any action or omission of Retailer or Retailer's employees, agents,
contractors, assigns or third parties; and
(3)    The operation of Retailer's business.
Retailer's obligation to indemnify and defend extends to any claim caused by the
concurrent or contributory negligence or fault of an indemnified party but not to any
claim shown by final non-appealable judgment to have been caused by the indemnified
parties' sole negligence or other defect in the products not caused or contributed to by any
negligence or fault of Retailer. . ."

**FIRST COUNT**

Paragraphs 1. – 23. are hereby incorporated and made Paragraphs 1. – 23. of this the First Count.

24.    The release and waiver language set forth above in Paragraphs 16. and 19. are violative of Conn. Gen. Stat. §42-*133l*(f)1 and are therefore unenforceable.

25.    The release and waiver language set forth above in Paragraphs 16. and 19. are violative of Conn. Gen. Stat. §42-133*l*(j) and are unenforceable.

26.    The representations as to the condition of the premises as set forth in Paragraph 20 were false and are known to be false by the Defendants.  Nevertheless, Defendant insists that the Plaintiffs make such representations.

27.    Responsibility for maintenance and repairs was previously upon the Defendants.

28.    The new franchise documents shift responsibility to Plaintiffs.

29.    The Defendant's insistence that Plaintiffs make false representations and the Defendant's attempt to shift responsibility to Plaintiffs for repairs and maintenance for which the Defendants were responsible violates of Conn. Gen. Stat. §42-133*l*(f)(6) and 42-133*l*(f)(8) and is unenforceable.

30.     The trial franchise provision set forth hereinabove at Paragraph 14. and 17. is violative of <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. §42-133f(d) and 42-133*l*(c).

30A.     The insertion of the Trial Franchise provision, if enforceable, devalues each of the Plaintiff's franchises in an amount in excess of Seventy-five thousand dollars.

31.     The transfer fee set forth hereinabove at Paragraph 18 is violative of <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. §42-133m as an impermissible restriction upon assignment or transfer of franchise interest.

32.     The indemnification language set forth above at Paragraph 23 violates of <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. §42-133*l*(h) and is unenforceable.

33.     The limitation of liability set forth in Paragraph 22 is inconsistent with <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. §42-133*l*(h) and is unenforceable.

33A.     The provisions set forth in paragraphs 13 and 13A, hereinabove are violations of <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. §42-133*l*(f)(5) and are unenforceable.

34.     As a result of the foregoing, the terms and conditions of the Defendant's contracts are unenforceable and the Plaintiffs are entitled to a declaratory judgment so stating.

35.     As a further result, the Plaintiffs are entitled to an injunction prohibiting the Defendants from enforcing said provisions and continuing to include them in the franchise documents.

14

## SECOND COUNT

Paragraphs 1. – 23. of the First Count are hereby incorporated by reference and made Paragraphs 1. – 23. this the Second Count.

24.     The release and waiver language set forth above at Paragraphs 16. and 19. are violative of 15 U.S.C. §2805(f) and is therefore unenforceable.

25.     The trial franchise provision as set forth hereinabove is unenforceable pursuant to 15 U.S.C. §2803 particularly when read in conjunction with Conn. Gen. Stat. §42-133*l*(c) and is therefore unenforceable.

26.     As a result of the foregoing the franchise terms set forth hereinabove are illegal and violative of federal law and the Plaintiffs are entitled to a declaratory judgment so stating.

27.     As a further result, the franchise terms are illegal and unenforceable and the Plaintiffs are entitled to an injunction prohibiting the Defendants from enforcing those franchise terms and prohibiting the inclusion of those terms in the franchise agreements.

## THIRD COUNT

1. – 23. of the First Count hereby incorporated by reference and made Paragraph 1. – 23. of this the Third Count.

24. 15 U.S.C. §2804 provides that "Prior to termination of any franchise, or non-renewal of any franchise relationship, the franchisor shall furnish notification of such termination or such non-renewal to the franchisee who is a party to such franchise, or such franchise relationship (1) in the manner described in subsection (c); and (2) except as provided in subsection (b) not less than ninety days prior to the date on which said termination or non-renewal takes effect".

25. Connecticut General Statute §42-133*l*(c) provides that "Notwithstanding the provisions of §52-550, no franchise entered into or renewed after October 1, 1973, whether oral or written, shall be for a term of less than three years, and for successive terms of not less than three years thereafter, unless canceled, terminated or not renewed pursuant to §§(a) and (d) of this section".

26. One, or more, of the Plaintiffs' franchise agreements, by its terms, expired prior to the Defendant, Motiva Enterprises, LLC, providing notice of non-renewal or termination of the franchise, as required under 15 U.S.C. §1804.

27. By operation of law said franchises automatically renew for a term of not less than three years under the same terms and conditions as contained in the expiring franchise documents. (hereinafter "Automatic Franchises").

28.  Despite the fact that numerous of the Plaintiffs' franchises have been renewed under the same terms and conditions for the next three years, Motiva at all times has refused to recognize or acknowledge or affirm the validity of said automatic franchises.

29.  Despite demand from the Plaintiffs/Dealers that the Defendant acknowledge the automatic franchises, the Defendant has refused to recognize and at all times has taken the position that unless the Plaintiffs/Franchisees comply with renewal franchises, unilaterally drawn by Motiva Enterprises, LLC, their franchises would be non-renewed and/or terminated.

## FOURTH COUNT

1. – 23. of the First Count hereby incorporated by reference and made Paragraph 1. – 23. of this the Fourth Count.

24.     The provisions set forth at paragraphs 21 and 21A are inconsistent with 15 U.S.C. §2805 (d)(3) as well as Conn. Gen. Stat. §42-133n(a).

25.     In addition, to the extent that the Attorney's Fee provisions are not inconsistent with the above referenced statutes they are nevertheless unenforceable to the extent that they do not provide for reciprocal attorney's fees for the franchisee.  Accordingly, said provision violates Conn. Gen. Stat.§42-133*l*(f)(6) and Conn. Gen. Stat. §42-133*l*(f)(8).

26.     As result of the foregoing the terms and conditions of the Defendant's contracts are unenforceable and the Plaintiffs are entitled to a declaratory judgment so stating.

27.     As a further result, the Plaintiffs are entitled to an injunction prohibiting the Defendants from enforcing said provisions and continuing to include them in the franchise documents.

## FIFTH COUNT

1. – 23. and 26. – 28. of the First Count hereby incorporated by reference and made Paragraphs 1. – 26. of this the Fifth Count.

26A. At all relevant times Motiva has asserted the validity of the aforesaid contractual provisions and has enforced the contractual provisions against the plaintiffs and others.

26B. As a result, the plaintiffs sustained monetary damages and a diminishment of the value of their franchises.

27.   The defendant's acts as aforesaid and the contractual provisions set forth above violate the Connecticut Unfair Trade Practices Act  Conn. Gen. Stat. § 42-110a et seq.

28.   As a result, the plaintiffs are entitled to their remedies under Conn. Gen. Stat. § 42-110g.

18

WHEREFORE, the Plaintiffs hereby demand:

1.    Declaratory judgment that the franchise terms set forth hereinabove are illegal and unenforceable;

2.    A declaratory judgment that any franchise for which the Defendant failed to produce renewal documents prior to 90 days before expiration of the Preliminary Franchise Agreement is automatically renewed pursuant to the terms of the prior agreement.

3.    An injunction barring the Defendants from including said franchise terms in any renewal franchise agreement and compelling the Defendants to remove those terms from any existing franchise agreement;

3A.   Relief under Conn. Gen. Stat. sec. 42-110g.

4.    Costs and attorney's fees provided by law;

5.    Such other relief as the Court deems just and equitable.

THE PLAINTIFFS,
HORACE BRUCE, ET ALS

By_____
John J. Morgan(ct 13312)
Barr & LaCava
22 Fifth Street
Stamford, CT 06905
Tel.#(203) 356-1505
Fax #(203) 357-8397

## **CERTIFICATION**

This is to certify that a copy was mailed via U. S. Mail, postage prepaid this _2_ day of May, 2005 to:

Paul D. Sanson, Esq.
Shipman and Goodwin LLP
One American Row
Hartford, CT 06103

Karen T. Staib, Esq.
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103

_____
John J. Morgan